LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** |
|---|---|

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**        (IN CHAMBERS)

## ORDER GRANTING MOTION TO DISMISS [27]

## I.    INTRODUCTION

Pending before the Court is Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). After consideration of the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, Defendants' motion is **GRANTED**.

## II.    BACKGROUND

### A. The Parties

Plaintiffs are comprised of two primary groups. First, Plaintiffs Surf City Steel, Inc., Sarens USA, Inc., and United Riggers & Erectors, Inc. (collectively, the "Employer Plaintiffs") are each California corporations that constitute "employers" within the meaning of 29 U.S.C § 152(2).[1] (Compl. ¶¶ 5–7.) Plaintiffs allege that the Employer Plaintiffs each perform work within the relevant market area described in the Complaint and perform relevant work within that market area. (Compl. ¶ 8.) Second, Plaintiffs

---

[1] Section 152(2) states: "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("Iron Workers"), International Association Local 378, International Association Local 377, International Association Local 433, International Association Local 29, and International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local 86 (collectively, the "Union Plaintiffs") are labor unions whose members perform relevant work.  (Compl. ¶¶ 9–14.)

Defendants are also labor unions which "conduct[] activities as a labor organization" in the relevant market area as defined in the Complaint.  (Compl. ¶¶ 15–19.)  The named Defendants in this action include International Longshore and Warehouse Union ("ILWU"), ILWU Local 10, ILWU Local 8, ILWU Local 19, and ILWU Local 13.  (Compl. ¶¶ 15–19.)

## B. The Relevant Market Area and Relevant Work

As defined in the Complaint, the "relevant market area" consists of "those port facilities on the West Coast of the United States within the States of California, Oregon and Washington, including, but not limited to the Long Beach, California Port Facility; the Los Angeles, California Port Facility; the Oakland, California Port Facility; the San Francisco Port Facility; the Portland, Oregon Port Facility; and the Seattle/Tacoma, Washington Port Facility."  (Compl. ¶ 20.)

The Complaint also defines the "relevant work" or the "relevant product" as: "the non-operational structural maintenance and structural modification of cranes and movement of cranes and all other work in connection therewith; and the jacking, erection and modification of new cranes and of existing cranes and movement of new cranes and existing cranes in connection therewith.  This includes the relocation of such cranes when such relocation or movement involves either the installation of new cranes or the jacking, erection, and modification of existing cranes, including the removal, wrecking and dismantling of such cranes and rubber gantry cranes."  (Compl. ¶ 21.)

## C. Factual Background

Plaintiffs allege that Defendants have acted in concert with various contractors who conduct business in the relevant market area to monopolize the relevant work market

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

and exclude Plaintiffs from conducting business in the relevant market area. (Compl. ¶¶ 22–30.)  According to Plaintiffs, in 2008 Defendants amended their collective bargaining agreement—known as the Pacific Coast Longshore Contract Document ("PCLCD")—which covers relevant work involving ports along the West Coast, including in Long Beach, Los Angeles, Oakland, Oregon, and Washington State. (Compl. ¶ 31.)  Plaintiffs allege that the PCLCD expired in 2014 but that Defendants continue to operate under its terms, which include a mandatory grievance and arbitration process in which Plaintiffs are not permitted to participate.  (Compl. ¶¶ 31–33.)  Plaintiffs claim that, through this grievance and arbitration procedure, Defendants have been denying work to contractors who are not signatories of the PCLCD by enforcing a provision of the PCLCD that requires work to be assigned only to PCLCD signatories. (Compl. ¶ 34.)  Plaintiffs also allege that arbitrators have ordered PCLCD signatories to cancel contracts with non-PCLCD signatories.  (Compl. ¶ 34.)

The Complaint asserts that the PCLCD's arbitration mechanism effectively prohibits Plaintiffs—who are not signatories to the PCLCD—from bidding on projects and performing work that they have traditionally performed in the relevant market area. (Compl. ¶¶ 36–37.)  Plaintiffs also allege that Defendants have monopolized the relevant market area by using coercion, threats, and violence.  (Compl. ¶ 38.)  In support of these allegations, Plaintiffs provide a number of factual examples in which Plaintiffs were precluded from bidding or working on certain projects in the relevant market area because they were not ILWU contractors.  (*See* Compl. ¶¶ 41–77.)

### D. Procedural History

As a result of these allegations, Plaintiff Iron Workers sent ILWU a letter in June 2014 in which Iron Workers accused Defendants of violating federal antitrust laws. (Compl. ¶¶ 40, 74, Ex. 3.)  When ILWU did not respond, Plaintiffs filed their Complaint on July 18, 2014.  (Dkt. No. 1.)  In their Complaint, Plaintiffs allege three causes of action for: (1) violation of sections 1 and 2 of the Sherman Act, (Compl. ¶¶ 78–85); (2) breach of contract, (Compl. ¶¶ 86–92); and (3) violation of section 303 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 187, (Compl. ¶¶ 93–95).  On October 9, 2014, Defendants filed the instant motion to dismiss.  (Dkt. No. 27.)  Plaintiffs opposed this motion on November 13, 2014, (Dkt. No. 33), and Defendants replied on December 8, 2014, (Dkt. No. 39).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

## III.  LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.  REQUEST FOR JUDICIAL NOTICE

When considering a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment.  *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n Solimino*, 501 U.S. 104 (1991).  Notwithstanding this precept, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).  Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Further, a court "must take judicial notice if a party requests

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

Defendants have requested that the Court take judicial notice of (1) the PCLCD, (2) Article XX of the American Federation of Labor-Congress of International Organizations ("AFL-CIO") Constitution, (3) an administrative law decision by Administrative Law Judge William L. Schmidt of the National Labor Relations Board ("NLRB"), and (4) four NLRB charges. (Dkt. No. 28.) Plaintiffs have opposed Defendants' request on the basis that Defendants cannot use these materials to create disputed issues of fact for consideration, which would transform this motion into a motion for summary judgment. (Dkt. No. 32.) To begin, both the PCLCD and Article XX of the AFL-CIO Constitution are specifically referenced and relied upon in Plaintiffs' Complaint. (*See, e.g.*, Compl. ¶¶ 31, 39, 72, 73, 87–91, 93.) Accordingly, these materials are properly the subject of judicial notice. *See Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference"); *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007) (finding it proper to take judicial notice of a document that was "integral to [the plaintiff]'s claim").

As for the administrative law decision by Administrative Law Judge Schmidt and the four NLRB charges, "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting *Interstate Nat'l Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). The Court may therefore properly take judicial notice of Judge Schmidt's decision. *See Transmission Agency of Cal. v. Sierra Pac. Power*, 295 F.3d 918, 924 n.3 (9th Cir. 2002) (taking judicial notice of administrative law judge decision in related administrative proceeding); *Ramirez v. Pac. Mar. Ass'n*, No. CIV. S-93-171EJG/JFM, 1993 WL 761988, at *1 n.1 (E.D. Cal. May 7, 1993) (taking judicial notice of an NLRB Administrative Law Judge's decisions). Similarly, the Court may take judicial notice of the publicly filed NLRB charges. *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (holding that district court properly took judicial notice of NLRB charge in context of Rule 12(b)(6) motion to dismiss); *Pathmark, Inc. v. United Food & Commercial Workers Union, Local 342*, No. 08-CV-2217JFBWDW, 2009 WL 2901623, at *4 (E.D.N.Y. Sept. 3, 2009) ("In addition, the Court also may

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

take judicial notice of public filings, including charges filed with the NLRB and NLRB decisions, on a Rule 12(b)(6) motion.").

The Court notes, however, that it takes judicial notice only of the existence of these documents. The "truth of the facts contained" in these documents is "not the proper subject of judicial notice." *Dicey v. Pickens*, 506 F. App'x 647, 648 (9th Cir. 2013); *accord Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 936 n.38 (C.D. Cal. 2012) ("The court considers only the *existence and contents* of the documents, not the truth of information contained in them." (emphasis added)). Defendants' request for judicial notice is therefore **GRANTED**.

## V.    DISCUSSION

Defendants seek dismissal of each of Plaintiffs' claims for (1) violation of section 303 of the LMRA; (2) violations of federal antitrust law; and (3) breach of contract. The Court will discuss each claim in turn.

### A. Section 303 of the LMRA

Section 303 of the LMRA "provides a judicial forum to pursue damages resulting from certain unfair labor practices committed by a union." *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union, Alaska Longshore Div., Unit 60*, 721 F.3d 1147, 1149 (9th Cir. 2013). Plaintiffs allege that Defendants have committed unfair labor practices because their conduct violates section 8(b)(4) of the LMRA, 29 U.S.C. § 158(b)(4). (Compl. ¶ 94.) Defendants make two arguments in favor of dismissing Plaintiffs' LMRA claims. First, Defendants argue that the Union Plaintiffs lack standing to assert such a claim. Second, Defendants contend that Plaintiffs have failed to allege a "secondary objective" as required by section 303 of the LMRA.

### 1.    The Union Plaintiffs Lack Standing

The Ninth Circuit has held that "Section 303's requirement that an injury occurs 'by reason of' a Section 8(b)(4) violation 'imposes standing limitations.'" *Am. President Lines*, 721 F.3d at 1153 (quoting *Fulton v. Plumbers & Steamfitters*, 695 F.2d 402, 405 (9th Cir. 1982)). To determine whether section 303 standing exists, courts are to look to:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

"(1) the nexus between the injury and the statutory violation; and (2) the relationship between the injury alleged and the forms of injury that Congress sought to prevent or remedy by enacting the statute." *Id.* And to determine the relationship between the injury and the statutory violation, courts "examine whether the plaintiff 'was within the target area of the defendant's illegal practices and was not only hit, but also aimed at.'" *Id.* (quoting *Fulton*, 695 F.2d at 406).

Defendants argue that the Ninth Circuit's holding in *Fulton* forecloses the Union Plaintiffs from having standing under section 303. In *Fulton*, the Ninth Circuit held that "employees of an enterprise injured by a union's violation of section 8(b)(4)(D) of the LMRA [do not] have standing under section 303 of the LMRA to maintain a suit for damages against the offending union." 695 F.2d at 405, 407–08. In doing so, the court noted that the "principal object of [defendant] unions' illegal activities was to pressure the site employer to reassign work from the members of the [plaintiffs' union] to members of the [defendant's] unions," which caused the site employer to "respond[] by suspending operation and temporarily laying off workers." *Id.* at 407. The court found that "[t]his consequence was not a 'necessary and integral' aspect of the section 8(b)(4)(D) violation," and therefore that "[t]he injury alleged [was] too remote from the alleged violation to warrant section 303 standing." *Id.*; *accord Prater v. United Mine Workers of Am., Dists. 20 & 23*, 793 F.2d 1201, 1206 (11th Cir. 1986) (applying *Fulton* to determine that employees lack standing to sue under § 303); *Starks v. Perloff Bros.*, 760 F.2d 52, 53 (3d Cir. 1985) (finding that plaintiffs, warehousemen who were members of defendant union, lacked standing to sue defendant under section 303); *Schrader v. Sheet Metal Workers Int'l Ass'n Local Union No. 20*, 656 F. Supp. 1487, 1498 (N.D. Ind. 1987) ("Courts have held in a variety of factual situations . . . that employees may not sue for damages pursuant to § 303 arising out of secondary activity.").[2]

---

[2] The District of Columbia Circuit persuasively explained the reasons for limiting standing pursuant to section 303: "The practical reasons justifying the view that section 303 imposes significant standing requirements are quite simple. Absent such requirements, 'unlimited liability under § 303 might produce financial disaster for unions and inhibit the exercise of the right to strike.' In light of these considerations, it has been clear to the courts that 'the imposition of unlimited liability under section 303 would tend to subvert our national labor policy.'" *Charvet v. Int'l Longshoremen's Ass'n, AFL-CIO*, 736 F.2d 1572, 1575 (D.C. Cir. 1984) (internal citations and modifications omitted) (quoting *W.J.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604 BRO (SSx) | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

While this case involves plaintiffs who are unions rather than employees who are *members* of a union, the Court finds that the analysis remains the same. Plaintiffs have alleged that Defendants' conduct has caused signatories to the PCLCD to "cease or refrain from doing business with Plaintiff employers and others who are signatory to an agreement with Plaintiff Unions," (Compl. ¶ 93), which has prevented members of the Union Plaintiffs from working. This is essentially the same as the allegation made in *Fulton*, where the employees argued that the defendant unions "pressure[d] the site employer to reassign work from the members of the [plaintiffs' union] to members of the [defendants'] unions," resulting in site employers "suspending operation and temporarily laying off workers." *Fulton*, 695 F.2d at 407. As in *Fulton*, the Court finds that Plaintiffs' alleged consequence is not a "necessary and integral aspect" of the alleged LRMA violation. *Id.* "The injury alleged is too remote from the alleged violation to warrant section 303 standing. Thus, the required nexus between the injury and the section 8(b)(4)(D) violation has not been established." *Id.* Accordingly, the Court concludes that the Union Plaintiffs lack standing to pursue their LMRA claims.

### 2. Secondary Objective

Defendants also argue that all Plaintiffs' LMRA claims should be dismissed because they fail to state a viable claim in the Complaint. Plaintiffs' LMRA claim is predicated upon violation of section 8(b)(4)(ii)(A) of the LRMA, which prohibits a union from "forc[ing] or require[ing] an employer to enter into a 'hot cargo' agreement prohibited by Section 8(e)." *Am. President Lines*, 721 F.3d at 1153. An example of such an agreement is a "union signatory" clause, "which prohibits the employer from subcontracting with all employers who are not union signatories." *Id.*; *accord NLRB v. Hotel & Rest. Emps. & Bartenders' Union*, 623 F.2d 61, 67 (9th Cir. 1980) ("[I]t is well settled that union signatory clauses violate section 8(e)."). To state an LMRA claim, Plaintiffs must therefore adequately allege that Defendants have violated section 8(b)(4) by enforcing an agreement that is prohibited under section 8(e), and that they consequently suffered damages as a result. *Am. President Lines*, 721 F.3d at 1157.

---

*Milner & Co. v. Int'l Bhd. of Elec. Workers, Local 349*, 476 F.2d 8, 12 (5th Cir. 1973); *Fulton*, 695 F.2d at 408.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

Plaintiffs state in the Complaint that Defendants have, pursuant to the PCLCD, conspired with port owners, port lessors, port contractors, port operators, and port managers to prohibit them from doing business with contractors who are not signatories to the PCLCD, thus precluding the Employer Plaintiffs from bidding on certain projects. (Compl. ¶¶ 22, 27, 28, 29, 32, 36, 93–95.)  Plaintiffs contend that Defendants carried out this conspiracy by including a "cease doing business" provision in violation of section 8(e) of the LMRA, which they have enforced through a grievance and arbitration process. (Opp. at 7.)  Yet Plaintiffs do not provide any citation to the alleged provision to which they are referring in the Complaint, choosing instead to rely on conclusory allegations such as: "Defendants ILWU have acted in concert and agreement with various contractors (who are not labor organizations), who conduct business within the relevant market area, to prohibit and preclude the performance of the relevant work by Plaintiff labor organizations through their members with Plaintiff employers and under the terms of their collective bargaining agreements."  (Compl. ¶ 22.)  Without any specific factual allegations from which the Court could infer that Defendants actually instituted such a "cease doing business provision," Plaintiffs have failed adequately to plead a violation of section 8(e) of the LMRA.

Rather, as Defendants argue, the only provisions Plaintiffs identify with any specificity (although they still do not provide a citation) are those relating to the PCLCD's arbitration and grievance process.  The Ninth Circuit has noted that, "[i]n rare cases, [a] union can commit a predicate unfair labor practice through its conduct in an arbitration proceeding," *Am. President Lines*, 721 F.3d at 1149.  In such cases, "[t]he Section 8(b)(4) violation occurs the moment the union pursues arbitration with an unlawful secondary motive."  *Id.* at 1155.  In this context, labor agreements are considered either "primary" or "secondary," the former being permissible while the latter are not.  *See N.L.R.B. v. Int'l Longshoremen's Ass'n, AFL–CIO*, 473 U.S. 61, 78–79 (1985).  For purposes of determining whether an agreement is primary or secondary, "[t]he touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-à-vis [its] own employees," *Nat'l Woodwork Mfrs. Ass'n v. N. L. R. B.*, 386 U.S. 612, 645 (1967)—that is, whether the agreement's "object . . . is to benefit the employees of the bargaining unit represented by the union" rather than to apply pressure to a "[neutral] employer in order to require [it] to accede to union objectives," *A. Duie Pyle, Inc. v. N.L.R.B.*, 383 F.2d 772, 776 (3d Cir. 1967);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

*accord Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, No. 1:13CV458 LMB/IDD, 2014 WL 4258087, at *9 (E.D. Va. Aug. 28, 2014).

Here, Plaintiffs allege that Defendants' "grievance and arbitration mechanism described . . . purports to remove work from non-ILWU signatory contractors through an arbitration process which affords them little or no opportunity to participate." (Compl. ¶ 36.) This bare assertion of a secondary purpose is conclusory. Plaintiffs also repeatedly allege that they were precluded from participating in these proceedings, (*see, e.g.*, Compl. ¶¶ 35–37, 54, 57), and that several of the Employer Plaintiffs were prohibited from performing certain work as a result of the arbitration proceedings, (*see, e.g.*, Compl. ¶¶ 55, 58). Yet Plaintiffs do not allege any *facts* from which the Court could infer that the purpose of these arbitration proceedings was to pressure contractors not to allow Plaintiffs (or other non-ILWU signatories) to work or bid on their projects.

Additionally, Plaintiffs allege that Defendants' conduct was "not an effort to preserve work jurisdiction." (Compl. ¶ 93.)[3] In their motion, Defendants dispute this by arguing that the facts at issue are entirely consistent with the ILWU's having acted for lawful, work preservation purposes. (Mot. at 5.) As Plaintiffs argue, however, it is not Plaintiffs' burden at this stage to prove that Defendants' conduct was *not* an effort to preserve work jurisdiction. Yet Plaintiffs do have an obligation to plead facts sufficient to support their LMRA claim, which they have failed to do. Accordingly, the Court finds that Plaintiffs have failed to state a claim under the LMRA. Plaintiffs' third cause of action is therefore **DISMISSED with leave to amend**.

### B. Antitrust

Next, Defendants seek to dismiss Plaintiffs' antitrust claims. Defendants' arguments against Plaintiffs' antitrust claims are threefold. First, Defendants again argue that the Union Plaintiffs lack standing. Second, Defendants contend that the alleged

---

[3] "A union's actions will not be deemed coercive under section 8(b)(4) if the purpose of those actions are aimed at preserving work for its employees in the bargaining unit (primary union activity), rather than accomplishing union goals elsewhere (secondary union activity)." *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union*, 997 F. Supp. 2d 1037, 1043 (D. Alaska 2014).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

conduct is exempt from antitrust law. And third, Defendants claim that the ILWU cannot constitute a monopolist in the relevant market as a matter of law.

### 1.  The Union Plaintiffs Lack Standing

To begin, Defendants contend that the Union Plaintiffs lack standing to pursue an antitrust claim.[4] Indeed, the Supreme Court has observed that unions will often lack antitrust standing because it is often not clear whether a union's interests would be served by enhanced competition in the market:

> As a general matter, a union's primary goal is to enhance the earnings and improve the working conditions of its membership; that goal is not necessarily served, and indeed may actually be harmed, by uninhibited competition among employers striving to reduce costs in order to obtain a competitive advantage over their rivals. . . . Set against this background, a union, in its capacity as bargaining representative, will frequently not be part of the class the Sherman Act was designed to protect, especially in disputes with employers with whom it bargains.

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 539–40 (1983) [hereinafter *AGC*]. Nevertheless, the Court held that, "[i]n each case [a union's] alleged injury must be analyzed to determine whether it is of the type that the antitrust statute was intended to forestall." *Id.*

The Supreme Court in *AGC* identified a number of factors that courts are to apply when evaluating whether an antitrust plaintiff has standing. These factors include: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the

---

[4] "Antitrust standing" is a distinct inquiry from that of constitutional standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983). "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Id.* "This determination of antitrust standing requires an evaluation of the plaintiff's harm, the alleged wrongdoing by the defendant, and the relationship between them." *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 448–49 (9th Cir. 1985).

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999).[5]  The Court will address each factor in turn.

### a.  The Nature of the Union Plaintiffs' Alleged Antitrust Injury

The first factor addresses the Union Plaintiffs' alleged antitrust injury to determine "whether it is of the type that antitrust law was intended to forestall"—that is, whether it was the result of anti-competitive behavior.  *Eagle*, 812 F.2d at 540.  "The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors."  *Id.* Defendants contend that the Union Plaintiffs are not participants in the relevant market, whereas Plaintiffs argue that they are.

Although the parties give short shrift to this issue, the Ninth Circuit has stated that it is of "tremendous significance" in determining standing.  *Sacramento Valley*, 888 F.2d at 606 (quoting *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 n.3 (9th Cir. 1985)).  A plaintiff "who is 'neither a competitor nor a consumer' in the relevant market does not suffer 'antitrust injury.'"  *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996) (quoting *In re Ins. Antitrust Litig.*, 938 F.2d 919, 926 (9th Cir. 1991)).  In the Complaint, Plaintiffs define the relevant market as including the "non-operational structural maintenance and structural modification of cranes and movement of cranes and all other work in connection therewith; and the jacking, erection and modification of new cranes and of existing cranes and movement of new cranes and existing cranes in connection therewith."  (Compl. ¶ 21.)  That definition makes this case similar to *AGC*, in which the Supreme Court interpreted the unions' complaint as alleging injury in "the market for construction contracting and subcontracting."  459 U.S. at 527.  In concluding that each union lacked antitrust standing, the Court in *AGC* found it significant that the union "was

---

[5] The Ninth Circuit has summarized the *AGC* factors in various ways, but the analysis remains the same in each case.  *See, e.g.*, *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989); *Sacramento Valley, Chapter of the Nat'l Elec. Contractors Ass'n v. Int'l Bhd. of Elec. Workers, Local 340*, 888 F.2d 604, 605 (9th Cir. 1989); *Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987).

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

neither a consumer nor a competitor in the market in which trade was restrained." *Id.* at 539.

Although Plaintiffs allege that the Union Plaintiffs are "in direct competition with the Defendant Unions," (Opp. at 10), this factor considers whether the plaintiffs were in competition in the *market* in which the alleged antitrust violation has occurred. And just as in *AGC*, the Union Plaintiffs are neither consumers nor competitors in the market of construction, maintenance, and structural modification of cranes and movement of cranes. Thus, this factor weighs sharply against finding antitrust standing. *See Eagle*, 812 F.2d at 541 ("The vessel owners are the requisite 'sellers' in the relevant market, not the crewmembers or the union. Thus, the class members have not alleged the type of injury antitrust laws were intended to forestall, because the alleged anticompetitive conduct was directed at the vessel owners, not the crewmembers or the union.").

### b. The Directness of the Alleged Injury

The second factor considers the directness of the alleged injury at stake. In considering this factor, "[t]he chain of causation between the injury and the alleged restraint in the market should lead directly to the 'immediate victims' of any alleged antitrust violation. Generally, employees have been denied standing where their injuries were merely derivative of that of the employer." *Id.* at 541. Plaintiffs again argue that the Union Plaintiffs' injury was direct because they are in direct competition with the Defendant unions, and because "Defendants have attempted to block Plaintiff Unions from job sites through their unlawful agreements and attempted to monopolize work that had previously been performed by Plaintiff Unions, thereby pushing said Unions out of the relevant market." (Opp. at 10.)

It is clear, however, that the Union Plaintiffs' injury is derivative of the alleged injury suffered by their members. Any economic injury suffered by the Union Plaintiffs must be a result of the dues paid to them by their members, which presumably decrease when their members are prevented from bidding or working on certain projects. Thus, as in *AGC*, "[i]t is obvious that any such injuries were only an indirect result of whatever harm may have been suffered by . . . construction contractors and subcontractors." *AGC*, 459 U.S. at 541; *accord Sacramento Valley*, 888 F.2d at 608 ("The derivative nature of the union's harm with regard to its allegations involving anti-competitive behavior in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

contractor's market is self-evident. . . .  The defendants *acted* in the contractor's market to effect the injuries alleged."); *Lucas v. Bechtel Corp.*, 800 F.2d 839, 844–45 (9th Cir. 1986) (finding that union electricians working on a construction project did not suffer direct injury from an alleged conspiracy between contractor and unions to monopolize the market in design and construction of such plants because the electricians' alleged injury—depressed wages—was an indirect consequence of the alleged monopoly). Consequently, this factor also weighs heavily against finding antitrust standing.[6]

### c.  The Speculative Measure of the Damages

Next, the Court considers the third factor—whether the measure of damages is speculative—and the fifth factor—the complexity in apportioning damages—together. "Two factors have been identified by the Supreme Court as indicating the speculative nature of a damage claim: (1) the indirectness of the alleged injury, and (2) that the alleged effects may have been produced by independent factors."  *Eagle*, 812 F.2d at 542. As explained above, the Union Plaintiffs' injury in this case is indirect.  Because the Union Plaintiffs' injury must be calculated by determining some undefined share of their members' losses, their damages are more speculative than that of the Employer Plaintiffs, whose injuries are direct.  *See Sacramento Valley*, 888 F.2d at 609 ("[I]t would be difficult, if not impossible, to determine what Local 340's 'share' of collective bargaining agreements is.").  Moreover, because both the Union Plaintiffs and the Employer Plaintiffs are asserting an antitrust claim, "separating [the Union Plaintiffs'] injuries from those of the injured employers could prove troublesome."  *Id.*  And, although neither party addresses it here, it is of course possible that any injury suffered by the Union Plaintiffs may be the result of independent factors.  *See id.* ("[T]he alleged 'loss of work opportunities' could be the result, at least in part, of a wide variety of independent factors having nothing to do with the alleged conspiracy.").  Accordingly, these factors both weigh against finding antitrust standing because permitting the Union Plaintiffs to proceed on their antitrust claim could cause "problems of identifying damages and apportioning them among directly victimized contractors and subcontractors and indirectly affected employees and union entities."  *AGC*, 459 U.S. at 545.

---

[6] The Court also echoes the Supreme Court's sentiment that "[t]he indirectness of the alleged injury also implicates the strong interest . . . in keeping the scope of complex antitrust trials within judicially manageable limits."  *AGC*, 459 U.S. at 543.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604 BRO (SSx) | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

### d. The Risk of Duplicative Recovery

Finally, the Court next considers the risk of duplicative recovery. "The risk to be avoided under this factor is that potential plaintiffs may be in a 'position to assert conflicting claims to a common fund . . . thereby creating the danger of multiple liability for the fund." *Eagle*, 812 F.2d at 542 (modification in original) (quoting *AGC*, 459 U.S. at 544). Here, the Union Plaintiffs' damages result from the direct injuries allegedly sustained by their members. Allowing both the affected union members *and* the unions themselves to sue would create the potential for multiple liability. *See AGC*, 459 U.S. at 544 ("[P]otential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund, . . . thereby creating the danger of multiple liability for the fund and prejudice to absent plaintiffs."); *cf. Am. Ad Mgmt.*, 190 F.3d at 1060 ("Because American's loss of business flowed directly from the advertisers' having to pay higher prices, there was no opportunity for American to pass on part of its damages to the advertisers, and no corresponding danger of duplicative recoveries under a pass-on theory."). Accordingly, this factor also weighs against finding standing.

As discussed above, all five factors identified by the Supreme Court in *AGC* weigh against finding that the Union Plaintiffs have antitrust standing. As a result, the Union Plaintiffs' antitrust claims are hereby **DISMISSED with leave to amend**.

### e. The Union Plaintiffs Also Lack Standing to Seek Equitable Relief for Their Antitrust Claims

Plaintiffs contend that, even if the Court finds that the Union Plaintiffs lack antitrust standing, they nevertheless retain standing to pursue equitable relief based on their antitrust claims. (Opp. at 11.) In support of this argument, Plaintiffs cite to *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 122 (1986), in which the Supreme Court found that an antitrust plaintiff seeking only equitable relief need not demonstrate actual injury. Yet the Court also held that such a plaintiff must demonstrate a "threat of *antitrust* injury," *id.*, and the Court has already determined that the injury complained of by the Union Plaintiffs is not "the type that antitrust law was intended to forestall," *Eagle*, 812 F.2d at 540. Accordingly, the Court finds that the Union Plaintiffs lack standing to seek equitable relief as well.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604 BRO (SSx) | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

## 2. Plaintiffs Have Failed to Plead an Antitrust Violation

Defendants next argue that the conduct alleged in the Complaint is exempt from antitrust law under both the statutory and nonstatutory labor exemptions. While Plaintiffs concede that it is appropriate for the Court to consider the statutory exemption, (Opp. at 17), they strongly oppose consideration of the nonstatutory exemption at this stage of the proceedings on the basis that it is an affirmative defense, (Opp. at 13–16). The Ninth Circuit has made clear that the *statutory* exemption "is not an affirmative defense; it's an element of any claim that unions violated the antitrust laws. Plaintiff bears the burden of proof." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 805 n.3 (9th Cir. 1994); *accord Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 15 F. Supp. 3d 1075, 1089 (D. Or. 2014) [hereinafter *ICTSI*] ("The statutory labor exemption is not an affirmative defense but is an element (or, to be precise, its inapplicability is an element) of any claim that a union has violated the antitrust laws. Accordingly, the party bringing the antitrust claim bears the burden of proving that the exemption does not apply."). Whether the *nonstatutory* exemption is appropriate to consider at the motion to dismiss stage is not as clear.

Plaintiffs correctly note that the Court is to draw all factual inferences in their favor and not to consider matters outside the pleadings of which the Court has not taken judicial notice. Nevertheless, "[w]hether the case can be dismissed on the pleadings depends on what the pleadings say. '[A] plaintiff may plead herself out of court.' If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (second modification in original) (citation omitted) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)). While the Court may not consider evidence or factual matter not presented in the pleadings or the judicially noticed documents, the Court can determine whether Defendants' conduct, as alleged by Plaintiffs, is exempt under the nonstatutory labor exemption. *See, e.g.*, *ICTSI*, 15 F. Supp. 3d at 1090–95 (finding defendant union's conduct to be exempt under nonstatutory labor exemption on motion to dismiss). As Defendants note, the only possible "agreement in restraint of trade" that Plaintiffs identify in the Complaint is the PCLCD, so it is that agreement that the Court will consider in determining whether Defendants' conduct is exempt.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

### a. The Nonstatutory Labor Exemption

Defendants argue that the PCLCD's provisions requiring its signatories to assign projects to ILWU labor are covered by the nonstatutory labor exemption. To determine whether the nonstatutory labor exemption applies, the Ninth Circuit has adopted the Eighth Circuit's test from *Mackey v. National Football League*, 543 F.2d 606 (8th Cir. 1976). *See Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 81 F.3d 858, 861 (9th Cir. 1996). "Under that test, the parties to an agreement restraining trade are exempt from antitrust liability only if (1) the restraint primarily affects the parties to the agreement and no one else, (2) the agreement concerns wages, hours, or conditions of employment that are mandatory subjects of collective bargaining, and (3) the agreement is produced from bona fide, arm's-length collective bargaining." *Phoenix Elec. Co.*, 81 F.3d at 861. To obtain dismissal of Plaintiffs' antitrust claims, Defendants must demonstrate that the Complaint fails adequately to plead *each* of these factors.

### i.     The Restraint Primarily Affects Only the Parties to the PCLCD

First, the Court considers whether the PCLCD "primarily affects" only the parties to the agreement. The Complaint never alleges who the parties to this agreement are. Nevertheless, the copy of the PCLCD of which the Court has taken judicial notice makes clear that the parties are Defendant ILWU and the Pacific Maritime Association ("PMA"). Moreover, the very same agreement was the subject of the court's analysis in *ICTSI*, in which the court described the agreement as a "collective bargaining agreement covering commercial ports along the West Coast, which governs the terms and conditions of employment of all longshore workers." 15 F. Supp. 3d at 1086.

Defendants argue that the PCLCD does not affect other parties who are not signatories to the agreement. By the terms of the PCLCD, Defendants appear to be correct. The PCLCD does not on its face impose any obligations on third parties who are not signatories to the agreement.[7] Nor does the Complaint identify any provisions of the

---

[7] While the factual findings of the court in *ICTSI* are not binding on this case, the Court notes that the court interpreted the PCLCD as primarily affecting only the ILWU and PMA—the parties to the agreement. *See ICTSI*, 15 F. Supp. 3d at 1093 ("The requirement that ILWU workers be assigned the work, however, is only binding on PMA members, who are parties to the collective bargaining

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

PCLCD that purport to do so.  Rather, Plaintiffs merely state that "Plaintiffs anticipate that the evidence will show that the agreement does not affect only the parties to the agreement." (Opp. at 15.)  That is insufficient for two reasons.  First, "[a]ll alleged anticompetitive conduct has some effect on consumers and competitors, but courts look to the *primary* effect of the alleged agreement and whether the alleged agreement 'imposes its terms on any nonsignatory party.'"  *ICTSI*, 15 F. Supp. 3d at 1093 n.8 (emphasis added) (quoting *Phoenix Elec.*, 81 F.3d at 862).  Consequently, it is not enough to allege that the PCLCD had *some* effect on third parties.  Second, and more importantly, Plaintiffs have not alleged any facts from which the Court could infer that the terms of the PCLCD have any effect on third parties.  Instead, Plaintiffs have provided only conclusory allegations in which they suggest that the PCLCD affects third parties by prohibiting them from working in the relevant market area.  (*See, e.g.*, Compl. ¶ 28 ("The altered interpretation of work within the exclusive jurisdiction of Defendants ILWU and its members and signatory contractors is being pressured upon all contractors who desire to perform work within the port areas in question . . . .").)  Under the *Iqbal/Twombly* pleading standard, this is not enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### ii.    The PCLCD Concerns Mandatory Subjects of Collective Bargaining

Second, the Court considers whether the PCLCD concerns "mandatory subjects of collective bargaining."  Plaintiffs contend that the "subcontracting clause" in the PCLCD—which requires PCLCD signatories to use ILWU labor in relevant work projects—is not a mandatory subject of collective bargaining because its purpose is work *acquisition* rather than work *preservation*.  (Opp. at 14–15.)  Yet Plaintiffs fail to explain how this clause does not constitute "work assignment," which is quite clearly a mandatory subject of collective bargaining.[8]  As the court explained in *ICTSI*, "[w]ork

---

agreement."); *id.* at 1093 n.8 ("Here, the alleged agreement is the PCLCD, and it does not impose the requirement that ILWU-represented workers be assigned reefer work on any nonsignatory party.").

[8] *See, e.g.*, *N.L.R.B. v. Solutia, Inc.*, 699 F.3d 50, 70 (1st Cir. 2012) (stating that "'jurisdictional' clauses that define the assignment of work to union members . . . address[] a mandatory subject of bargaining"); *McKenzie Eng'g Co. v. N.L.R.B.*, 303 F.3d 902, 908 (8th Cir. 2002) (observing that "assignment of work to union members" was "a mandatory subject of collective bargaining"); *Local 58, Int'l Bhd. of Elec.*

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

assignments are mandatory subjects of collective bargaining, even if the employer is assigning work outside of the collective bargaining unit." 15 F. Supp. 3d at 1094. Plaintiffs do not allege any other subjects covered by the PCLCD that are not mandatory subjects of collective bargaining.

### iii.    The PCLCD Was Produced by Arm's-Length Collective Bargaining

Third, the Court examines whether the PCLCD was the product of bona fide, arm's-length collective bargaining. Nothing alleged in the Complaint suggests that it was not. Nor do Plaintiffs argue that they have any facts to support such a contention. Rather, they again state that they "anticipate that the evidence will show that these agreements were not the result of bona fide arms-length bargaining." (Opp. at 15.) As discussed above, that is insufficient to state a valid claim under the *Iqbal/Twombly* standard. Plaintiffs have thus failed to plead facts from which the Court can infer that the PCLCD is not exempt from antitrust scrutiny under the nonstatutory labor exemption.

### b.  The Statutory Labor Exemption

Defendants next argue that the remaining conduct alleged by Plaintiffs in support of their antitrust claims is exempt under the statutory labor exemption. Specifically, Defendants are referring to Plaintiffs' allegations that the ILWU has engaged in "illegal picketing, strikes and job action, threats of violence and coercion to bid the work in question." (Compl. ¶¶ 32–33.) The parties dispute whether these alleged acts were committed for a "legitimate labor interest"—that is, whether the purpose of their actions was work acquisition or work preservation. The Court need not decide that issue at this stage, however, because Plaintiffs' allegations as to these activities are inadequate.

---

*Workers, AFL-CIO v. Se. Mich. Chapter, Nat'l Elec. Contractors Ass'n, Inc.*, 43 F.3d 1026, 1032 (6th Cir. 1995) (noting that "work assignment" and "jurisdiction" are "two mandatory subjects of bargaining"); *Chem. Leaman Tank Lines, Inc. v. Cent. Conference of Teamsters Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, No. 93 C 51, 1993 WL 214119, at *5 (N.D. Ill. June 17, 1993) ("It is well settled that clauses concerning the assignment of work to union members are mandatory subjects of bargaining . . . ."); *Antelope Valley Press*, 311 N.L.R.B. 459, 460 (1993) ("The assignment of work affects terms and conditions of employment, and therefore is a mandatory bargaining subject . . . .").

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604 BRO (SSx) | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

Plaintiffs' allegations constitute only vague accusations of violence, coercion, and threats.  (*See* Compl. ¶¶ 32, 33, 38.)  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Moreover, the Court notes that such actions, even if sufficiently pleaded, do not constitute an antitrust violation.  *See Sacramento Valley*, 888 F.2d at 606 n.3 ("We need not pause long over Local 340's second claim, which alleges that the conspirators coerced, threatened and restrained non-NECA employers and contractors from entering into collective bargaining agreements with Local 340.  The district court correctly noted that under *AGC*, this allegation 'does not describe an antitrust violation.'" (quoting *AGC*, 459 U.S. at 527)).  Accordingly, for all of the reasons stated above, Plaintiffs' antitrust claims must be **DISMISSED with leave to amend**.[9]

### C. Breach of Contract

Finally, Defendants address Plaintiffs' breach of contract claim by Iron Workers, in which Plaintiffs allege that ILWU breached Article XX of the AFL-CIO Constitution.  It is undisputed that Iron Workers is affiliated with the AFL-CIO and that the ILWU *was* party to the AFL-CIO Constitution until September 2013 when they withdrew.  (Compl. ¶¶ 86, 90.)  Iron Workers now claims that the ILWU breached section 3 of Article XX of the AFL-CIO Constitution, which states: "Each affiliate shall respect the established work relationship of every other affiliate. . . .  No affiliate shall by agreement or collusion with any employer or by the exercise of economic pressure, seek to obtain work for its members as to which an established work relationship exists with any other affiliate, except with the consent of such affiliate."  (Compl. ¶ 88.)

In support of their motion to dismiss this claim, Defendants raise myriad defenses.  Some of these defenses, such as laches,[10] unclean hands,[11] and material breach[12] are

---

[9] Defendants also argue that the ILWU cannot constitute a monopolist as a matter of law.  As Defendants do not provide any authority supporting this position, however, at this time, the Court declines to so hold.  Defendants may raise this issue again if they have authority to support it.

[10] *See Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005) ("At the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is even greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint."), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604 BRO (SSx) | Date | January 20, 2015 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

affirmative defenses and are inappropriate to consider at this stage because the Complaint does not provide sufficient factual allegations to resolve them.  Other arguments—such as Defendants' contention that the contract at issue disallows damages as a remedy or their suggestion that Defendants cannot be liable under Article XX because they are no longer party to it—are not adequately supported by the authority Defendants cite.[13]  Two arguments, however, warrant discussion.

First, Defendants correctly argue that Iron Workers cannot seek equitable relief pursuant to this claim.  The basis for Iron Workers' claim that the ILWU has breached Article XX of the AFL-CIO Constitution is that the ILWU "raid[ed] work traditionally performed by" Iron Workers through enforcement of its collective bargaining agreement, the PCLCD.  (Compl. ¶ 89; *accord* Compl. ¶ 73 ("Historically, in spite of the PCLCD and its predecessor agreements, Plaintiff International Association members and other crafts have performed the relevant work based on the expertise of their members, traditional custom and practice and the experience, expertise and cost effectiveness of their contractors.").)  Yet the Ninth Circuit has observed that "national labor policy dictates that local jurisdictional contracts, such as the [AFL-CIO agreement] here, are secondary to bona fide, industry-wide collective bargaining agreements, and when in

---

SC, 2014 WL 1091589, at *13 (N.D. Cal. Mar. 13, 2014) ("Courts have noted that this postural requirement poses a nearly insurmountable obstacle to a favorable resolution of a defendant's fact-dependent laches claim.").

[11] *See, e.g.*, *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1111 (C.D. Cal. 2010) (referring to the defendant's affirmative defense of unclean hands).

[12] *See, e.g.*, *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (noting that material breach is an affirmative defense).

[13] There is a factual issue as to each of these defenses.  Plaintiffs contend that the ILWU withdrew from the AFL-CIO in anticipation of impending charges.  (Opp. at 20, 24.)  Consequently, Plaintiffs argue that Iron Workers could not avail itself of the remedy prescribed by the AFL-CIO Constitution—which Defendants argue bars any claim for damages—so it had no other choice but to file this lawsuit.  If the ILWU withdrew from the AFL-CIO specifically to avoid charges by Iron Workers and others, the ILWU cannot both insulate itself from monetary liability by invoking the terms specifying the appropriate remedy under the AFL-CIO Constitution and argue that it is no longer bound by those terms because it withdrew.  Accordingly, the Court defers resolution of these defenses until a later stage in the proceedings.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | Date | January 20, 2015 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

conflict the jurisdictional contract must give way." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 94, Local Lodge No. 1484 v. Int'l Longshoremen's & Warehousemen's Union, Local 13*, 781 F.2d 685, 690 (9th Cir. 1986) [hereinafter *Machinists*]. In *Machinists*, the Ninth Circuit reversed a district court's order granting an injunction to enforce a local jurisdictional agreement between two unions because it conflicted with the then-operative collective bargaining agreement between the ILWU and the PMA. The court reasoned:

> To permit individual members or segments of the bargaining unit to unilaterally alter the agreements reached through the bargaining process would result in serious consequences to the labor relations framework. For example, the district court's injunction in this case could cause immediate harm to neutral employers through the loss of experienced workers. It could also raise the threat of a crippling ILWU strike if employers resorted to hiring nonlongshoremen. Most devastating from the standpoint of labor relations stability, however, is the injunction's potential effect on future bargaining between PMA and ILWU, for it would permit locals to execute agreements which conflict with those entered into by the certified bargaining agent. Therefore, the injunction ordering the specific performance of the 1973 jurisdictional agreement cannot stand.

*Id.* The Court finds that *Machinists* controls the situation at hand. Enforcement of the AFL-CIO, which is "a contract between labor organizations within the meaning of 29 U.S.C. Section 1985," (Compl. ¶ 87), cannot require the ILWU to breach its obligations under the PCLCD. Accordingly, Iron Workers cannot seek equitable relief under its breach of contract claim.

Second, Defendants argue that the Complaint fails to state a claim for breach of the AFL-CIO Constitution. By its terms, Article XX prohibits signatories to the Constitution from interfering with the "established work relationship" of other signatories, which is deemed to exist with regard to any work that is "customarily performed at a particular plant or worksite." (Compl. ¶ 88.) According to Defendants, the Complaint fails to state a breach of this provision because "it alleges only prospective bidding of work or new work of Plaintiffs' that by definition fail[s] to constitute [work] 'customarily performed at a particular plant or worksite' under Article XX." (Mot. at 17.) Indeed, the allegations in

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604 BRO (SSx)** | | Date | January 20, 2015 |
|---|---|---|---|---|
| Title | **SURF CITY STEEL, INC. ET AL. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | | |

the Complaint appear to concern only Plaintiffs' inability to submit bids for certain projects on which they would typically bid, (*see* Compl. ¶¶ 41, 42, 43, 48), and loss of work opportunities involving plants or worksites with which Plaintiffs do not allege to have a preexisting relationship such that they would "customarily" perform that work *at that site*, (Compl. ¶¶ 49, 50, 54, 56, 59). The Complaint is replete with allegations that Plaintiffs historically performed this *type of work*, but they do not allege that they customarily performed it at the sites in question so as to demonstrate the "established work relationship" that Article XX seeks to protect. Accordingly, the Court finds that Plaintiffs have failed to state a claim for breach of Article XX of the AFL-CIO Constitution. This claim is therefore **DISMISSED with leave to amend**.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED**. Each of Plaintiffs' causes of action is **DISMISSED with leave to amend**. Plaintiffs must file an amended complaint by no later than **Tuesday, February 10, 2015**.

The hearing set for January 26, 2015 is VACATED.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |