**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SURF CITY STEEL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, et al., <br><br> Defendants. | Case No. CV 14-5604 BRO (SSx) <br><br> **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Dkt. No. 109)** <br><br> **DISCOVERY CUT-OFF: 01/09/16** |

**I.**

**INTRODUCTION**

On November 15, 2016, Defendant International Longshore and Warehouse Union Local 13 ("ILWU" or "Defendant") filed a Motion to Compel Production of Documents ("Motion" or "MTC"), including the declaration of Defendant's counsel, Eleanor Morton ("Morton Decl.").[1] (Dkt. No. 109). The Parties filed a Joint Stipulation in connection with the Motion pursuant to Local Rule 37-2 ("Jt.

---

[1] Attached as Exhibit H to Morton's declaration is a declaration by forensic account Vanessa Hill ("Hill Decl.") describing the categories of information that Hill believes are necessary to determine lost profits damages.

Stip."). (Dkt. No. 110). Plaintiffs filed a Supplemental Memorandum in Opposition to the Motion on November 28, 2016 ("P Supp. Memo."). (Dkt. No. 115). On November 29, 2016, Defendant filed a Supplemental Memorandum in Support of the Motion ("D Supp. Memo."). (Dkt. No. 116).

On December 13, 2016, the Court held a hearing. For the reasons stated below and at the hearing, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## II.

### ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

This antitrust action was brought by certain contractors and labor organizations that provide or seek to provide the "services and labor necessary for the non-operational structural maintenance and structural modification of cranes" (the "relevant work") at ports in California, Oregon and Washington (the "relevant market"). (Dkt. No. 47 at 6). The operative Second Amended Complaint alleges that Defendants ILWU and its West Coast Locals "have acted in concert and agreement with various port managers . . . to prohibit and preclude the performance of the relevant work" by Plaintiffs at these ports. (Id. at 7). Specifically, Plaintiffs claim that prior to 2008, "all of the relevant work performed at the ports in the relevant market area was performed . . . exclusively by members of the Plaintiff Unions . . . ." (Id. at 8). However, Plaintiffs contend that in 2008, Defendants and the port managers "entered into an agreement

which for the first time . . . required that the relevant work could not be awarded to any contractor not affiliated with the Defendants." (Id. at 9). Among other relief, Plaintiffs seek to recover lost profits on jobs that "could have been obtained if competing bids had been allowed," including jobs that Plaintiffs were "originally awarded, but [that were] then taken away from them[,] as well as future jobs on which they no longer can compete, but would have been awarded had they been able to compete." (Id. at 33-34).

## III.

## THE REQUESTS FOR PRODUCTION

The Motion identifies five Requests for Production ("RFP") that were served separately on Plaintiffs Surf City Steel, Inc. ("Surf City") and Sarens USA, Inc. ("Sarens") (collectively, "Plaintiffs"):[2]

   a.  All DOCUMENTS CONCERNING [Plaintiffs'] **costs of doing business**, including, but not limited to, **any**

---

[2] Surf City and Sarens, formerly known as Rigging International, are identified as the "Plaintiff Employer Parties" in the Second Amended Complaint. (Dkt. No. 47 ¶¶ 5-6). The six other Plaintiffs are labor organizations (the "Plaintiff Union Parties"), which are not implicated in the instant Motion. (Id. ¶¶ 8-13). Accordingly, apart from the summary of allegations of the Second Amended Complaint in Part II, the word "Plaintiffs" as used in this Order shall refer to Surf City and Sarens only and shall not include the Plaintiff Union Parties. Although Surf City and Sarens were served separately, their responses to the RFPs at issue appear to be identical. (See Morton Decl., Exhs. A-B (responses to RFPs by Surf City and Sarens, respectively)).

3

        **and all contracts, ledgers, balance sheets, income statements, invoices, correspondence, and audited documents** reflecting [Plaintiffs'] labor costs, operating costs, equipment maintenance costs, rental costs, lease costs.

  b.  All DOCUMENTS CONCERNING [Plaintiffs'] **income earned or derived from any source**, including but not limited to, any and all correspondence, and audited documents reflecting any work [Plaintiffs] performed or income [Plaintiffs] received from January 1, 2007 to the present.

  c.  All DOCUMENTS CONCERNING **any and all bids or other proposals** [Plaintiffs'] **made for work at any time** from January 1, 2007 to the present.

  d.  All DOCUMENTS CONCERNING [Plaintiffs'] **business, income, and expense projections and budgets** [Plaintiffs'] produced, obtained, drafted, or circulated from January 1, 2007 to the present.

  e.  All DOCUMENTS CONCERNING **financial statements with costs and expenses for each of [Plaintiffs'] product lines**, including but not limited to [Plaintiffs'] West Coast waterfront work.

\\
\\

(Jt. Stip. at 1-2 (emphasis added); see also Morton Decl., Exhs. A-B). Plaintiffs objected to each of these RFPs as overbroad. (Id.). Plaintiffs further objected on the ground that the Requests seek "confidential and proprietary" information that "cannot be released without an appropriate protective order."[3] (Id.).

To date, Plaintiffs have not produced any documents responsive to these Requests other than their tax returns, which Defendants argue provide insufficient information "to understand and test the bases for Plaintiffs' claims that they lost work that they had previously performed because of the alleged actions of Defendants and that they suffered damages." (D Supp. Memo. at 2).

## IV.

## SCOPE OF PERMISSIBLE DISCOVERY

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the

---

[3] Even though Defendant served its document requests in September and Plaintiffs identified the need for a protective order in their responses, served on October 5, 2016 -- **more than two and a half months ago**, the Parties have not yet submitted a Stipulated Protective Order for the Court's consideration, and none has been entered.

>case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401.[4]

The revisions to Rule 26 make clear that the right to discovery is not limitless. As one court explained,

>The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." The pretrial process must provide parties with

---

[4] The December 2015 amendments to Rule 26 deleted the former language that provided for the discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26 Advisory Committee Notes (2015 amendments), ¶ 19.

> efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery.

Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. Jan. 11, 2016) (quoting John Roberts, 2015 Year-End Report on the Federal Judiciary 6 (Dec. 31, 2015) (internal citations omitted)). Both discovery requests and discovery responses must be guided by the principles of reasonableness and proportionality. See Fed. R. Civ. P. 26 Advisory Committee Notes (2015 amendments) ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."); Salazar v. McDonald's Corp., 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016) ("[T]he revised rule places a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts.").

**V.**

**DISCUSSION**

**A.    Standard**

Pursuant to Federal Rule of Civil Procedure 34(a), a party may request documents "in the responding party's possession,

custody, or control." "The phrase 'possession, custody or control' is in the disjunctive and only one of the numerated requirements need be met." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995). "Control is defined as the legal right to obtain documents on demand." United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989).

Rule 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity." Fed. R. Civ. P. 34(b)(1). "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." Bruggeman ex rel. Bruggeman v. Blagojevich, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (internal quotation marks omitted); see also Regan-Touhy v. Walgreen Co., 526 F.3d 641, 649-50 (10th Cir. 2008) ("Though what qualifies as 'reasonabl[y] particular' surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced.'") (quoting Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415).

Following a reasonable investigation to locate responsive materials, a responding party must serve a written response to each request either stating that it will produce copies of the documents requested or identifying the grounds for any objection.

The December 1, 2015 revisions to the Federal Rules amended Rule 34 to require that objections to requests for production be stated with specificity, and that the responding party affirmatively state whether any documents are being withheld pursuant to an objection.

The 2015 Advisory Committee Notes to Rule 34 explain:

> Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language from Rule 33(b)(4) [pertaining to interrogatories], eliminating any doubt that less specific objections might be suitable under Rule 34. The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld on the basis of that objection . . . [¶] Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. . . . [T]he producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection.

Fed. R. Civ. P. 34, Advisory Committee Notes (2015 Amendments).

**B.  Plaintiffs Must Produce Further Responses And Documents Responsive To The Requests On An Expedited Basis**

Defendant argued at the hearing that even though fact discovery is nearly at a close and its requests for production were served months ago, it still has no idea what Plaintiffs' alleged damages are or how Plaintiffs calculate them.  According to Defendant, it has addressed the substance of Plaintiffs' objections to the RFPs by agreeing to:  (1) exclude from the scope of the RFPs materials protected from production by the attorney-client privilege, (2) allow the production to take place pursuant to a protective order, and (3) limit production to "Plaintiffs' own records in their possession, custody or control."  (Jt. Stip. at 3).  Plaintiffs counter that the "tax records and disclosures that [they] have already made relating to lost profits are more than sufficient for Defendants to prepare their case," and argue that if Defendants believe that they require additional information, "they can file a more specific request detailing exactly what information they need."  (P Supp. Memo. at 3).

Plaintiffs' arguments are not well taken.  Plaintiffs' production to date of only their tax returns is patently inadequate, as even the cases cited by Plaintiffs in opposition to the Motion required more substantial disclosures of lost profits evidence than Plaintiffs have thus far been willing to produce.  Furthermore, Plaintiffs have offered no plausible or persuasive excuse, in their briefs or at the hearing, why they

10

have not yet produced documents to which Defendant is unquestionably entitled, even if Plaintiffs believe that the RFPs are overbroad in other respects. Plaintiffs' representation at the hearing that they "intend" to produce some unidentified documents on December 19, nearly three months after the document requests were propounded, only one day before the scheduled deposition of its 30(b)(6) witness, and barely more than two weeks before the close of fact discovery is too little, too late, and strongly suggests to the Court that Plaintiffs have not taken their discovery obligations seriously. In addition to a woefully inadequate production of documents, Plaintiffs' written Objections to the RFPs also violate the disclosure requirements of Rule 34, as amended in December 2015. Instead of stating their objections with specificity, as required by Rule 34, Plaintiffs wrongly asserted boilerplate objections. Furthermore, Plaintiffs failed to disclose what documents were being withheld, if any, subject to the objections, as Rule 34 now clearly requires.

It is beyond serious dispute that a plaintiff that files an action alleging lost profits puts its own financial condition at issue and must produce financial condition evidence. <u>Ayers Oil Co. v. American Business Brokers, Inc.</u>, 2009 WL 2592154, at *3 (E.D. Mo. Aug. 20, 2009) ("By filing a lawsuit seeking damages for lost profits, Erker Brothers had put its financial condition at issue . . . ."). There is ample support for the proposition that a plaintiff seeking lost profits must produce financial information beyond tax returns to enable the defendant to test

the plaintiff's damages contentions. See, e.g., <u>Suntree Technologies, Inc. v. Ecosense Int'l, Inc.</u>, 2010 WL 11474256, at *7 (M.D. Fla. Dec. 6, 2010) (ordering plaintiff seeking lost profits damages to produce "tax returns, general ledgers and other financial records, such as balance sheets, income statements, statements of retained earnings and statements of cash flow"); <u>Channel Control Merchants, LLC v. Davis</u>, 2012 WL 1365743, at *1 (S.D. Miss. Apr. 19, 2012) ("Because CCM is seeking lost profits, the court finds that its tax returns and financial statements are relevant to this action and that there is a compelling need for the documents."); <u>Spin Master Ltd. v. Bureau Veritas consumer Products Service, Inc.</u>, 2016 WL 690819, at *4 (W.D. N.Y. Feb. 22, 2016) (requiring plaintiff alleging lost profits to produce, <u>inter alia</u>, "audited financial statements" for the relevant period and "information contained in any field in its SAP database which pertains to both the Aqua Dots and Pixos product lines for the entire time frame relevant to [plaintiff's] claim for damages"). Discoverable information may include information needed to test whether a purported loss of business may be attributable to factors besides the allegedly anticompetitive conduct. See <u>Air Tech Equip., LTD v. Humidity Ventilation Sys., Inc.</u>, 2006 WL 3193720, at *2 (E.D. N.Y. Nov. 2, 2006) ("Particularly in light of defendants' specific allegations of injury in pleading their counterclaims, the Court concludes that plaintiffs are entitled to some information to test whether defendants' purported loss of business was attributable to factors other than plaintiffs' alleged anticompetitive conduct."). Accordingly, the Court orders as follows:

**1. Costs Of Doing Business**

Defendant seeks evidence of Plaintiffs' business expenses, including ledgers, balance sheets, and income statements, as well as contracts, invoices, audited documents and correspondence that reflect labor and operating expenses. (Jt. Stip. at 1). Defendant's counsel clarified at the hearing that Defendant seeks documents that would be routinely used by a forensic accountant to determine the costs of doing business.

Given the size of the companies as described by Plaintiffs at the hearing, it is likely that Plaintiffs maintain electronic versions of ledgers, balance sheets, profit and loss statements, and potentially other documents described in the request using off-the-shelf or standard software programs, which can be copied and produced relatively easily. This information is critical to Defendant's ability to defend this action. The Second Amended Complaint does not quantify the "lost profits" damages Plaintiffs seek. (See Dkt. No. 47 ¶¶ 159-62). As noted above, Defendant represented at the hearing that even though Plaintiffs brought this action in 2014, it still has no idea how much Plaintiffs believe this case is worth, which is information that should have been included in Plaintiffs' initial disclosures and updated thereafter even without a formal request. See Fed. R. Civ. P. 26(a)(1)(A)(iii). Defendant is entitled to investigate in greater detail than Plaintiffs' tax records permit the underlying information revealing Plaintiffs' cost of doing business during the relevant period.

13

Accordingly, Defendant's Motion with respect to evidence reflecting Plaintiffs' cost of doing business is GRANTED IN PART. Plaintiffs are ORDERED to produce ledgers, balance sheets, income statements, audited statements and contracts reflecting their "labor costs, operating costs, equipment maintenance costs, rental costs, and lease costs" for doing the "relevant work" in the "relevant market," as those terms are defined in the Second Amended Complaint, or for any other work that Plaintiffs contend was affected by or connected to Defendants' alleged violations, from January 1, 2007 to the present. The request for individual invoices and correspondence is DENIED WITHOUT PREJUDICE on the ground that such information is less likely to be critical to a forensic accounting of Plaintiffs' financial condition.

**2. Income Earned Or Derived From Any Source**

Defendant seeks evidence of Plaintiffs' income "earned or derived from any source" including ledgers, balance sheets, and income statements, as well as contracts, invoices, audited documents and correspondence that reflect work performed or income received. (Jt. Stip. at 1). Defendant conceded at the hearing that the request for information relating to income earned or received will likely be satisfied in large part by the production of materials responsive to the request for information reflecting the costs of doing business. Like cost information, information about Plaintiffs' income is also plainly relevant to a calculation of lost profits.

14

Accordingly, Defendant's Motion with respect to evidence reflecting Plaintiffs' income is GRANTED IN PART. Plaintiffs are ORDERED to produce ledgers, balance sheets, income statements, audited statements and contracts reflecting any income earned or derived for doing the "relevant work" in the "relevant market," as those terms are defined in the Second Amended Complaint, or for any other work that Plaintiffs contend was affected by or connected to Defendants' alleged violations, from January 1, 2007 to the present. The request for individual invoices and correspondence is DENIED WITHOUT PREJUDICE on the ground that such information is less likely to be critical to a forensic accounting of Plaintiffs' financial condition.

### 3. Bids Or Other Proposals

Defendant seeks evidence of Plaintiffs' "bids or other proposals" for work. (Jt. Stip. at 2). Evidence of Plaintiffs' efforts to solicit work, whether successful or unsuccessful, is plainly relevant to a claim for lost profits, and would indeed seem to be a predicate for such a claim.

Accordingly, Defendant's Motion with respect to evidence reflecting bids and proposals for work is GRANTED IN PART. Plaintiffs are ORDERED to produce documents <u>sufficient to show</u> bids and proposals to perform the "relevant work" in the "relevant market" as those terms are defined in the Second Amended Complaint, or for any other work that Plaintiffs contend

15

was affected by or connected to Defendants' alleged violations, from January 1, 2007 to the present.

### 4. Business, Income And Expense Projections And Budgets

Defendant seeks evidence of "business, income and expense projections and budgets" prepared or circulated by Plaintiffs. (Jt. Stip. at 2). Projections and budgets appear relevant to a lost profits claim to the extent that they can be used to show that a diversion of resources from one product line to another many have been for reasons unrelated to the alleged anticompetitive behavior.

Accordingly, Defendant's Motion with respect to evidence reflecting cost projections and budgets is GRANTED IN PART. Plaintiffs are ORDERED to produce documents <u>sufficient to show</u> cost projections and budgets to perform the "relevant work" in the "relevant market," as those terms are defined in the Second Amended Complaint, or any other work that Plaintiffs contend was affected by or connected to Defendants' alleged violations, from January 1, 2007 to the present.

### 5. Financial Statements With Costs And Expenses For Each Product Line

Defendant seeks "financial statements with costs and expenses for each of [Plaintiffs'] product lines, including but not limited to [Plaintiffs'] West Coast waterfront work." (Jt.

Stip. at 3). It is unclear whether any such documents exist, and as such, whether Plaintiffs are withholding any responsive materials. There is no obligation by a responding party to create documents. However, to the extent that Plaintiffs do have "financial statements" summarizing costs by "product line," the information would appear useful to a forensic analysis of Plaintiffs' profit margins and may help illuminate Plaintiffs' motivations for diverting resources from one product to another.

Accordingly, Defendant's Motion with respect to financial statements reflecting costs and expenses by product line is GRANTED IN PART. Plaintiffs are ORDERED to produce financial statements <u>sufficient to show</u> costs and expenses by product line, to the extent any such documents exist, from January 1, 2007 to the present. Responsive documents include, but are not limited to, product lines encompassing the "relevant work" in the "relevant market."

## VI.
## CONCLUSION

For the foregoing reasons, and the reasons stated on the record at the hearing, Defendant's Motion to Compel is GRANTED IN PART and DENIED IN PART. Further written responses to the discovery requests shall be served by **10:00 a.m. on December 19, 2016**. The Court selects this date, recognizing that it provides a short review and production schedule for Plaintiffs, because of the fast-approaching December 20, 2016 deposition of Plaintiffs'

30(b)(6) witness and the discovery cut-off date in early January 2017. To the extent this imposes a burden on Plaintiffs, it is a burden of their own making, by failing to comply with their obvious discovery obligations. **However, if the parties wish to discuss and negotiate a revised schedule for this supplemental production, including rescheduling the deposition, the parties shall submit a stipulation and proposed order for the Court's consideration.**

Documents potentially responsive to the RFPs for which Defendant's Motion was granted shall be produced simultaneously with the supplemental written responses, i.e., by **10:00 a.m. on December 19, 2016**. Plaintiffs shall delete all "boilerplate" objections from their responses. If any documents are withheld, those documents must be identified in accordance with the amendments to Rule 34. See Fed. R. Civ. P. 34, Advisory Committee Notes (2015 Amendments), ¶¶ 3, 5.

**By close of business on December 19, 2016**, the Parties shall file an appropriate proposed stipulated protective order. A sample protective order is available on Judge Segal's Schedules and Procedures page of the Court's public website. See http://www.cacd.uscourts.gov. The Parties may modify the proposed Order to limit review of the financial records to attorneys and/or experts, if necessary. If the Parties are unable to agree on a stipulated protected order, each Party shall submit its own proposed protective order by the same deadline.

1   The Parties shall treat all documents produced in connection
2   with this Order as highly confidential until the Court approves
3   and enters a protective order. This interim protection will not
4   apply if the Parties fail to submit a proposed protective order,
5   either jointly or separately, by the Court's deadline.

7   IT IS SO ORDERED.

9   DATED: December 14, 2016

             _____/S/_____
             SUZANNE H. SEGAL
             UNITED STATES MAGISTRATE JUDGE