LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | Date | December 28, 2016 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS)

### ORDER RE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE, FOR CERTIFICATION FOR INERLOCUTORY APPEAL; MOTION TO JOIN PACIFIC MARITIME ASSOCIATION OR, ALTERNATIVELY TO DISMISS; AND, MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT [97, 104, 112]

## I.      INTRODUCTION

Currently pending before the Court are three Motions: (1) Defendants International Longshore Warehouse Union ("ILWU"), ILWU Local 8, ILWU Local 10, ILWU Local 13, and ILWU Local 19's (collectively, "Defendants") Motion for Reconsideration, or, in the Alternative, for Certification for Interlocutory Appeal regarding this Court's September 12, 2016 Order denying Defendants' Motion for Summary Judgment, (Dkt. No. 97 (hereinafter, "Reconsideration Mot.")); (2) Defendants' Motion to Join Pacific Maritime Association ("PMA") or, Alternatively, to Dismiss, (Dkt. No. 104 (hereinafter, "Joinder Mot.")); and, (3) Defendants' Motion for Leave to File a Motion for Summary Judgment, (Dkt. No. 112 (hereinafter, "Mot. for Leave")).  After consideration of the papers filed in support of and in opposition to the instant Motions, the Court deems these matters appropriate for decision without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, Defendants' Motion for Reconsideration is **GRANTED in part** and **DENIED in part**, Defendants' Request for Certification for Interlocutory Appeal or Stay is **DENIED**, Defendants' Motion to Join PMA is **GRANTED**, and Defendants' Motion for Leave to File a Motion for Summary Judgment is **GRANTED**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604-BRO (SSx) | Date | December 28, 2016 |
|----------|----------------------|------|-------------------|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

## II.   BACKGROUND

### A.   Factual Background

Plaintiffs Surf City Steel, Inc. and Sarens USA, Inc. (collectively, "Employer Plaintiffs" or "Plaintiffs") are each California corporations that constitute "employers" within the meaning of 29 U.S.C. § 152(2).[1]  (Dkt. No. 47 (hereinafter, "SAC") ¶¶ 5–6.) Plaintiffs are primarily in the business of heavy-lift crane rental.  (Dkt. No. 87 (hereinafter, "SUF") ¶ 67.)  Plaintiffs allege that they each perform work within the relevant market area described in the SAC and performed relevant work within that market area.  (SAC ¶ 7.)

As defined in the SAC, the "relevant market area" consists of:

> those port facilities on the West Coast of the United States within the States of California, Oregon and Washington, including the Long Beach, California Port Facility; the Los Angeles, California Port Facility; the Oakland, California Port Facility; the San Francisco Port Facility; the Portland, Oregon Port Facility; and the Seattle/Tacoma, Washington Port Facility.

(SAC ¶ 19; *see also* SUF ¶ 60.)  The SAC also defines the "relevant work" as:

> the labor and services necessary for the non-operational structural maintenance and structural modification of cranes and movement of cranes and all other work in connection therewith; and the jacking, erection and modification of new cranes and of existing cranes and movement of new cranes and existing cranes in connection therewith.  This includes the relocation of such cranes when such relocation or movement involves either the installation of new cranes or the jacking, erecting, and modification of

---

[1] Section 152(2) states: "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

existing cranes, including the removal, wrecking and dismantling of such cranes and rubber gantry cranes.

(SAC ¶ 20; *see also* SUF ¶ 58.)  Plaintiffs have a collective bargaining agreement with the Ironworkers and Operating Engineers unions, but do not employ ILWU longshoremen.  (SUF ¶ 68.)

The ILWU was formed in 1934 and is a labor organization that represents a single, coastwise bargaining unit of all longshore workers and marine clerks employed by PMA member companies in California, Oregon, and Washington ports.  (SUF ¶¶ 1–3.)  PMA is a multi-employer association whose members are stevedore companies, marine terminal operators, carriers, and maintenance companies.  (SUF ¶¶ 7–8, 80.)  Some PMA member companies employ ILWU longshoremen and clerks and compete against each other for business at various West Coast ports.  (SUF ¶¶ 9–10.)

For those PMA member companies that employ ILWU workers, PMA is the collective bargaining representative between the companies and the ILWU.  (SUF ¶ 11.)  ILWU and the PMA members who hire ILWU workers are party to a collective bargaining agreement: the Pacific Coast Longshore Contract ("PCL&CA").  (SUF ¶ 12.)  The PCL&CA includes two contract documents, the Pacific Coast Clerk's Contract Document ("PCCCD") and the Pacific Coast Longshore Contract Document ("PCLCD").  (SUF ¶ 13.)  The PCCCD governs the terms and conditions of employment for marine clerks, and the PCLCD governs the terms and conditions of employment for longshore workers that PMA member companies employ on the West Coast.  (SUF ¶¶ 14–15.)  The PCLCD applies to all longshore workers that PMA member companies employ, including longshoremen who perform maintenance and repair work.  (SUF ¶ 16.)

The term of each successive contract between the ILWU and PMA has ranged from two to six years, and each contract has always had the same expiration date of July 1.  (SUF ¶¶ 19–20.)  Both parties have a bargaining committee that conducts the contract negotiations.  (SUF ¶¶ 21–22.)  Contract negotiations usually occur in April or May and last until a settlement is reached.  (SUF ¶ 24.)  During the negotiations, the parties hold joint sessions and internal caucuses with negotiations being held five or six days a week and often going late into the night and through weekends.  (SUF ¶¶ 26–27.)

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

In 2008, the parties negotiated the terms of the PCLCD, and the bargaining between the ILWU and PMA followed these patterns.  (SUF ¶ 28.)  The contract negotiations began in March 2008, and on July 28, 2008, the parties reached a final agreement on all the negotiated terms.  (SUF ¶¶ 29–30.)  During the negotiations, the parties discussed many issues, including whether PMA companies could automate their waterfront facilities and install robotics without interference from the ILWU. (Declaration of Leal Sundet (Dkt. No. 80-3) (hereinafter, "Sundet Decl.") ¶ 11.)  In exchange, as an attempt to protect ILWU workers and ensure that they had continued work, the ILWU proposed modifications to the PCLCD's provisions regarding maintenance and repair work (the "M&R Provisions").  (SUF ¶¶ 34–35; *see also* Sundet Decl. ¶ 10, Ex. A (hereinafter, "PCLCD").)  According to Defendants, the ILWU and PMA exchanged multiple counter-proposals regarding the M&R Provisions.  (SUF ¶ 38; *see also* Declaration of Lindsay R. Nichols (Dkt. No. 80-2), Ex. B at 38:6–38:9.) Towards the end of the 2008 negotiations, the parties finally agreed to all of the revisions to the M&R Provisions.  (SUF ¶ 39.)

The 2008 PCLCD has resulted in less work for ironworkers since 2008. (Kasprowicz Dep. at 49:5–49:24.)  Plaintiffs claim the revisions to the M&R Provisions preclude them from bidding on relevant work within the relevant market area because they do not use ILWU longshoremen and thus are "not invited" to bid on jobs.  (SUF ¶ 89; Declaration of Paul C. Hetterman (Dkt. No. 85-1), Ex. C at 42:22–43:5.)  Further, when the ILWU challenges the award of work to non-ILWU contractors, the non-ILWU contractors have no right to participate in the arbitration regarding that award.  (SUF ¶ 72.)  Plaintiffs assert that this arbitration mechanism effectively prohibits Plaintiffs— who are not signatories to the PCLCD—from bidding on projects and performing work that they have traditionally performed in the relevant market area.  (SAC ¶¶ 60–68.)

### B.     Procedural Background

Plaintiffs[2] filed their initial complaint on July 18, 2014.  (Dkt. No. 1.)  On October 9, 2014, Defendants filed a Motion to Dismiss the Complaint, (Dkt. No. 27), which the

---

[2] The Court dismissed with prejudice all claims brought by Plaintiffs International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, International Association Local 378, International Association Local 377, International Association Local 433, International Associations

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

Court granted on January 20, 2015, (Dkt. No. 40).  Plaintiffs then filed a First Amended Complaint on February 9, 2015.  (Dkt. No. 41.)  On February 23, 2015, Defendants filed a Motion to Dismiss the First Amended Complaint, (Dkt. No. 42), which the Court granted on April 6, 2015, (Dkt. No. 46).

Plaintiffs filed the operative Second Amended Complaint ("SAC") on April 20, 2015.  (*See* SAC.)  In the SAC, Plaintiffs allege three causes of action for: (1) violation of sections 1 and 2 of the Sherman Act, (SAC ¶¶ 90–130); (2) breach of contract, (SAC ¶¶ 131–42); and, (3) violation of section 303 of the Labor-Management Relations Act, 29 U.S.C. § 187, (SAC ¶¶ 143–62).  Defendants filed a Motion to Dismiss the SAC on May 4, 2015, (Dkt. No. 48), which the Court granted in part and denied in part on June 18, 2015, (Dkt. No. 52).  The Court dismissed with prejudice Plaintiffs' first cause of action with respect to the Union Plaintiffs, as well as Plaintiffs' second and third claims.  (Dkt. No. 52 at 22.)

Defendants filed a Motion for Summary Judgment on July 6, 2015.  (Dkt. No. 55; *see also* Dkt. No. 58-1 (corrected memorandum).)  The Court denied Defendants' Motion as premature, but granted Defendants leave to file another Motion for Summary Judgment once the facts were developed further.  (*See* Dkt. No. 68.)  On July 11, 2016, Defendants brought a renewed Motion for Summary Judgment.  (*See* Dkt. No. 80.)  On September 12, 2016, the Court denied Defendants' Motion.  (*See* Dkt. No. 96 (hereinafter, "Order").)  On September 22, 2016, Defendants filed the instant Motion for Reconsideration of the Court's Order denying Defendants' Motion for Summary Judgment.  (*See* Reconsideration Mot.)  On October 3, 2016, Plaintiffs timely filed their Opposition.  (*See* Dkt. No. 100 (hereinafter, "Reconsideration Opp'n").)  Defendants timely replied on October 10, 2016.  (*See* Dkt. No. 101 (hereinafter, "Reconsideration Reply").)

On October 27, 2016, Defendants also filed a Motion to Join PMA or, Alternatively, to Dismiss.  (*See* Joinder Mot.)  On November 7, 2016, Plaintiffs timely opposed Defendants' Motion.  (*See* Dkt. No. 105 (hereinafter, "Pls.' Joinder Opp'n").)

---

Local 29, and International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local 86 (collectively, the "Union Plaintiffs").  (Dkt. No. 52.)  Surf City Steel, Inc. and Sarens USA, Inc. are the only remaining Plaintiffs.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

On November 21, 2016, non-party PMA filed an Opposition to Defendants' Joinder Motion. (*See* Dkt. No. 113 (hereinafter, "PMA Joinder Opp'n").) On the same day, Defendants filed a Motion for Leave to File a Motion for Summary Judgment. (*See* Mot. for Leave.) On November 28, 2016, Plaintiffs opposed Defendants' Motion for Leave. (*See* Dkt. No. 114 (hereinafter, "Leave Opp'n").) On December 5, 2016, Defendants filed Replies in support of their Motions for Joinder and for Leave. (*See* Dkt. Nos. 119, 120 (hereinafter, "Joinder Reply").)

## III.   **LEGAL STANDARD**

### A.   **Motion for Reconsideration**

A final order may be reconsidered "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). If the motion is filed within twenty-eight days of entry of judgment, it is treated as a Rule 59(e) motion. *See Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (referring to a previous version of Rule 59(e) requiring the motion to be filed within ten days of judgment instead of twenty-eight); Fed. R. Civ. P. 59(e) (requiring a motion to alter or amend a judgment to be filed within twenty-eight days after entry of judgment); *see also* Fed. R. Civ. P. 59 advisory committee's notes to 2009 Amendments. Otherwise, the motion is treated as a Rule 60(b) motion. *Am. Ironworks & Erectors*, 248 F.3d at 899.

Under Rule 59(e), reconsideration is appropriate if (1) the court "is presented with newly discovered evidence," (2) the court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law." *Sch. Dist. No. 1J*, 5 F.3d at 1263. Other highly unusual circumstances may also warrant reconsideration under the rule. *Id.* Rule 60(b) sets forth the following grounds for relief from a final judgment: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial"; (3) fraud; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or, (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b); *see also Am. Ironworks & Erectors*, 248 F.3d at 899.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | Date | December 28, 2016 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

The Central District's Local Rules further limit the grounds for reconsideration. Under Local Rule 7-18, a party may seek reconsideration only upon a showing of one of the following: (1) "a material difference in fact or law" from that initially presented to the Court, which the party could not have known by exercising reasonable diligence; (2) "the emergence of new material facts or a change of law" after the Court's order; or (3) "a manifest showing of a failure to consider material facts presented to the Court." C.D. Cal. L.R. 7-18. Local rules have the force and effect of law so long as they are not inconsistent with a statute or the Federal Rules. *See Atchison, Topeka & Santa Fe R.R. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). A court should not depart from the local rules unless the effect on the parties' rights would be "so slight and unimportant that the sensible treatment is to overlook it." *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).

## B.    Motion for Joinder

A party may move to join a party whose presence is required, *see* Fed. R. Civ. P. 19(a)(1), or to dismiss a case for "failure to join a party under Rule 19," Fed. R. Civ. P. 12(b)(7). Joinder of parties under Rule 19 requires a three-step inquiry. *Salt River Project Agric. Improvement and Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). First, a district court must consider whether the absent party is "necessary" under Rule 19(a). *Id.* If so, then the court must consider whether it is "feasible" to order the absent party's joinder. *Id.* If joinder is not feasible, the court must consider whether the case can proceed without the absent party, or whether the absent party is "indispensable such that the action must be dismissed." *Id.*

A party may be "necessary" under Rule 19(a) in three ways: (1) "if, in his absence, the court cannot accord complete relief among existing parties"; (2) "if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest"; or (3) "he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest." *Id.* "There is no precise formula for determining whether a particular non-party is necessary to an action; the determination will be heavily influenced by the facts and circumstances of each case." *Biagro W. Sales, Inc. v. Helena*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | | Date | December 28, 2016 |
|----------|---------------------------|---|------|-------------------|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | | |

*Chem. Co.*, 160 F. Supp. 2d 1136, 1142 (E.D. Cal. 2001) (citing *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991)).

If a party is necessary but cannot be joined, dismissal is only appropriate if the party is "indispensable" under Rule 19(b). A party is indispensable if his "participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004). Rule 19(b) sets forth four factors to consider in determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)–(4).

## IV.  DISCUSSION

### A.  Defendants' Motion for Reconsideration

#### 1.  Whether Reconsideration is Warranted

First, the Court will decide Defendants' Motion for Reconsideration of the Court's Order denying Defendants' Motion for Summary Judgment. (*See* Reconsideration Mot.) Defendants' Motion for Summary Judgment relied on the nonstatutory labor exemption to the antitrust laws that applies to unions. (*See* Dkt. No. 80.) As the Court explained in its Order, some union-employer agreements must be accorded "a limited nonstatutory exemption from antitrust sanctions." *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 622 (1975). To determine when this nonstatutory exemption applies, the Ninth Circuit has adopted the Eighth Circuit's three-part test from *Mackey v. National Football League*, 543 F.2d 606 (8th Cir. 1976). *See Phoenix Elec.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

*Co. v. Nat'l Elec. Contractors Ass'n*, 81 F.3d 858, 861 (9th Cir. 1996). Under the *Mackey* test, an agreement restraining trade does not violate antitrust law if: "(1) the restraint primarily affects the parties to the agreement and no one else, (2) the agreement concerns wages, hours, or conditions of employment that are mandatory subjects of collective bargaining, and (3) the agreement is produced from bona fide, arm's-length collective bargaining." *Id.*

In denying Defendants' Motion, the Court held that they had met their burden as to the second and third prongs, but had failed to establish under the first prong that, in this case, the restraint primarily affects the parties to the agreement. (*See* Order at 13–19.) Defendants allege that the Court made at least two manifest mistakes in coming to its decision. (Reconsideration Mot. at 4.) First, Defendants argue that the Court erred when distinguishing the instant case from a similar decision in *International Longshore and Warehouse Union v. ICTSI Oregon, Inc.*, 15 F. Supp. 3d 1075 (D. Or. 2014). (Mot. at 4–6.) Second, Defendants argue that the Court erred in holding that Defendants intended to injure or limit the business of non-parties to the agreement. (Reconsideration Mot. at 6.) Defendants argue that, in the alternative, if the Court decides not to reconsider its Order, the Court should certify the instant case for interlocutory appeal, or stay the proceedings pending the outcome of the pending appeal in the *ITCSI* case. (Reconsideration Mot. at 7–12.)

Defendants claim that the Court erred when it noted that, unlike in *ITCSI*, the PCLCD provisions at issue here do not contain an effective "grandfather clause"[3] that would allow PMA members who had direct contracts with other unions prior to the PCLCD to continue to perform the relevant work. (Reconsideration Mot. at 4.) According to Defendants, the provisions at issue in *ICTSI* were "exactly the same set of exceptions contained in the PCLCD in the instant case." (*Id.* (citing *ICTSI*, 15 F. Supp. 3d at 1086).) Defendants argument fails for two reasons.

---

[3] The Court agrees with Defendants that "grandfather clause" is not a term of art in relation to this exemption. (*See* Reconsideration Mot. at 5 n.3.) This does not mean, however, that the phrase is any less useful when discussing whether the PCLCD protects work previously performed by non-ILWU workers.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

First, though the Court distinguished *ICTSI* in a footnote of its Order based on its questioning of counsel at oral argument, any differences the instant case may or may not have with *ICTSI* was not dispositive to this Court's determination. Ultimately, in finding that Defendants' failed to establish that the PCLCD primarily affected parties to the agreement, the Court held that the PCLCD's subcontracting provision "does not attempt to reduce competition naturally by controlling wages or employment conditions; it explicitly prevents PMA from subcontracting with non-ILWU workers." (Order at 14.) This is true regardless of whether the PCLCD contains a "grandfather clause."

The Court noted the existence (or lack thereof) of a grandfather clause in the PCLCD only to distinguish the facts of the Ninth Circuit's decision in *Granddad Bread, Inc. v. Continental Baking Co.*, 612 F.2d 1105 (9th Cir. 1979)—which, as Plaintiffs note, was decided *before* the Ninth Circuit adopted the *Mackey* analysis for applying the nonstatutory labor exemption. *Granddad* did not utilize the *Mackey* analysis, and—as the Court noted in its Order, (*see* Order at 15)—primarily relied upon the fact that the collective bargaining agreement at issue there was a valid work preservation clause in determining that the nonstatutory labor exemption applied.[4] *See Granddad*, 612 F.2d at 1110–11. Consequently, *Granddad* has little application to the instant case. Therefore, the Court clarifies that the existence (or not) of a grandfather clause in the PCLCD and the *ITCSI*'s mention of such a clause in its decision was not dispositive.[5] Thus, the Court

---

[4] The Court held in its Order that the PCLCD is not a valid work preservation agreement. (Order at 17.)

[5] The Court also clarifies that it appears that the *ITCSI* court and this Court are examining different levels in the process for the award of work. In *ITCSI*, the court found that the PCLCD only affected the parties to it, because non-PMA members could compete for work and, if awarded the work, could assign the work to non-ILWU workers. *See ITCSI*, 15 F. Supp. 3d at 1093–94 ("Non-PMA members can compete for stevedoring work and its ancillary services and can assign anyone they choose to perform the reefer work."). Based on Plaintiffs' SAC, this Court, however, views the issue as whether, once PMA members are awarded work, any non-ILWU member may compete for subcontracting work. The answer, under the PCLCD, appears to be "no." Thus, the PCLCD eliminates competition for work unnaturally—and does not protect those who previously performed the work—once a PMA-member has been awarded the task. Even if the PCLCD contains a clause that "goes some distance" to ensure that narrow exceptions of work may be performed by non-ILWU workers (as counsel represented at oral argument), this does not change the Court's conclusion that the PCLCD does not primarily affect the parties to it, as the possibilities for competition to obtain new work and maintain previously-awarded

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | | |

finds this did not constitute manifest error and **DENIES** Defendants' Motion for Reconsideration on this ground.

Second, the Court is not convinced that the grandfather clause in *Granddad*, which allowed "any baker which was then using a [non-union] delivery method" to continue using that delivery method, is sufficiently similar to any "grandfather clause" in the PCLCD.  As counsel explained upon questioning at oral argument, the PCLCD does not contain a "general grandfather exception" that would allow any prior non-ILWU worker to continue to perform work for which he has been traditionally contracted, though it includes "narrower exceptions that go some distance toward preserving historical work relationships."  Thus, the Court is not convinced that to the extent *Granddad* is applicable, it is sufficiently similar to the facts in the instant case to warrant reconsideration of the Court's decision.  Accordingly, the Court also finds that this holding did not constitute manifest error and that the Court did not fail to consider material facts and, thus, **DENIES** Defendants' Motion for Reconsideration on this ground.

Defendants also contend that the Court erred in holding that the purpose behind the PCLCD was to injure or limit the business of non-ILWU workers.  (Reconsideration Mot. at 6.)  Defendants' point is well taken and the Court clarifies its holding.  In *Granddad*, the Court explained that if the *purpose* behind the collective bargaining agreement there had been "to injure or limit the business of others who were not signators of the agreement" this would have constituted "an illegal secondary purpose."  *Granddad*, 612 F.2d at 1111.  Here, the Court did not intend to hold that the parties entered into the PCLCD for "an illegal secondary purpose"; rather, the Court was noting that Defendants intended to restrict or eliminate subcontracting, which has the ultimate *effect* of injuring or limiting the business of non-ILWU workers.  (*See* Order at 15.)  Nonetheless, because the purpose of the PCLCD was to eliminate subcontracting—even if Defendants did not specifically intend to injure or limit the business of others—and this was achieved by explicitly requiring certain competitors perform the work instead of reducing competition naturally by controlling wages or employment conditions, the PCLCD runs afoul of *Connell*.  *See Connell*, 421 U.S. at 623; *see also Phoenix Elec. Co.*, 81 F.3d at 861.

subcontracting work are, by and large, unnaturally eliminated once a PMA-member company is awarded the work.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | | |

Therefore, the Court **GRANTS** Defendants' Motion for Reconsideration to clarify this limited point, but, nonetheless, **DENIES** Defendants' Motion for Summary Judgment.

> **2.     Whether Certification for Interlocutory Appeal or a Stay is Warranted**

Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal when the "order involves a controlling question of law as to which there is substantial ground for difference of opinion" and an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "[T]he party pursuing the interlocutory appeal bears the burden" of demonstrating that the requirements are met. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Here, the Court finds that the Court's decision here does not involve a controlling issue of law and that no substantial ground for difference of opinion exists.

> **a.     Whether the Order Involves a Controlling Question of Law**

"A question is 'controlling' if 'resolution of the issue on appeal could materially affect the outcome of litigation in the district court.'" *Sateriale v. RJ Reynolds Tobacco Co.*, No. 2:09-cv-08394-CAS(SSx), 2015 WL 3767424, at *2 (C.D. Cal. June 17, 2015) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 2010)). The issue certified for interlocutory appeal must be "of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" rather than a reexamination of the facts or application of the law to the case. *Id.* (citing *Carrillo v. Schneider Logisitics Trans-Loading & Distrib., Inc.*, No. 2:11-CV-8557-CAS(DTBx), 2014 WL 1155403, at *3 (C.D. Cal. Mar. 21, 2014)). "The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence of facts of a particular case and give it general relevance to other cases in the same area of law." *Simmons v. Akanno*, No. 1:09-cv-00659-GBC (PC), 2011 WL 1566583, at *3 (E.D. Cal. Apr. 22, 2011) (citation omitted). "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact, or whether the district court properly applied settled law to the facts." *Porter v. Mabus*, No. 1:07-CV-0825 AWI SMS, 2014 WL 669778, at *2 (E.D. Cal. Feb. 20, 2014) (citation omitted).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

In this case, Defendants fail to establish that there is a pure issue of *law* that may be certified for interlocutory appeal. Rather, Defendants dispute the Court's application of the law surrounding the nonstatutory antitrust exemption to the facts of the instant case, and argue that the Court came to the incorrect conclusion by determining that the nonstatutory exemption does not apply here. Though—as with any court order—there are legal issues involved, the Court finds that this case is not one where the legal question is "at a high enough level of abstraction to lift the question out of the details of the evidence" or facts of the instant case. *See Simmons*, 2011 WL 1566583, at *3. In order for the Ninth Circuit to address the matter on appeal, it would be required to examine the facts of the case and the Court's application of the nonstatutory exemption to those facts, instead of focusing on a purely legal examination. This type of examination is not appropriate for § 1292(b) review.

> **b.    Whether There is Substantial Ground for Difference of Opinion**

Second, Defendants contend that because the *ICTSI* court addressed the same provisions at issue here and came to a different conclusion, this constitutes "substantial ground for difference of opinion." (Reconsideration Mot. at 9.) The fact that two district courts have examined similar issues and come to different conclusions does not, on its own, establish substantial ground for difference of opinion, however. "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *See Couch*, 611 F.3d at 633. "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (internal quotation marks omitted). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.* As Defendants note, "[t]his Court interpreted the *Mackey* test differently, and reached the opposite conclusion" than the *ICTSI* court. (Reconsideration Reply at 12.) Thus, by Defendants' own admission, the issue here is that two courts interpreted and applied the *same* settled law (the *Mackey* test) and came to two different conclusions as to its scope and application in similar (though not identical)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

proceedings.  Therefore, the Court finds that there is no substantial ground for a difference of opinion here and this matter is not properly certifiable under § 1292(b).

Thus, even assuming that an interlocutory appeal would materially advance the termination of the litigation, 28 U.S.C. § 1292(b), the Court finds that Defendants have failed to establish the first two requirements of interlocutory certification.  Accordingly, Defendants' request that the Court certify this matter for interlocutory appeal is **DENIED**.

### c.    Whether a Stay Pending the Ninth Circuit's Decision in *ICTSI* is Warranted

Next, Defendants argue that the Court should stay the instant case until the Ninth Circuit reaches a decision in the currently pending appeal in *ITCSI*.  (Reconsideration Mot. at 11–12.)  District courts have the inherent authority to stay proceedings before them.  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In considering a motion to stay, however, courts generally consider three factors: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and, (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  Additionally, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

Here, the Court finds that there are two primary concerns that make staying the case pending the Ninth Circuit's decision in *ICTSI* inappropriate.  First, while the district court in *ICTSI* addressed the nonstatutory labor exemption, it also addressed numerous other issues, all of which may be the primary focus of the Ninth Circuit's decision appeal. *See ICTSI*, 15 F. Supp. 3d 1075.  Thus, it is unclear how much direction, if any, the Ninth Circuit's opinion will provide to aid the Court's application of the nonstatutory labor exemption and the *Mackey* test.  Second, it is unclear how long any such stay may be

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

required to last.  As noted above, a stay should only be granted if "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.  The Ninth Circuit has, as of today's date, not released its decision in the *ICTSI* appeal and it is impossible to predict when any such decision may be released.  Moreover, Defendants have filed a Motion for Leave to File a Motion for Summary Judgment requesting that the Court hear any such Motion in March 2017.  (*See* Mot. for Leave at 5.)  This suggests to the Court that Defendants are prepared to move forward in this matter reasonably quickly.  Accordingly, the Court finds that a stay would be inappropriate due to the indeterminate length of the stay and the relative speed with which this action may otherwise proceed.  Therefore, Defendants' request that the Court stay this matter is **DENIED**.

### B.   Motion for Joinder of PMA

#### 1.   Whether PMA is a Required Party Under Rule 19

Defendants contend that the Court should require PMA be joined to the instant action, or, alternatively, that the action should be dismissed because Plaintiffs have failed to include PMA as a defendant.  (*See* Joinder Mot.)  Plaintiffs and PMA both argue that PMA's presence is unnecessary.  (*See* Pls.' Joinder Opp'n; PMA Joinder Opp'n.)  Defendants claim that Plaintiffs' SAC challenges provisions of the PCLCD, and that, because PMA is a party to the PCLCD, PMA's presence is necessary in an action to set it aside or to interpret its terms.  (*See* Joinder Mot. at 7–10.)

As explained above, Rule 19(a)(1)(A) requires that a party be joined to an action if "in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  "There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)."  *Bakia v. County of Los Angeles*, 687 F.2d 299, 300 (9th Cir. 1982).  "Underlying policies include plaintiff's right to decide whom he shall sue, avoiding multiple litigation, providing the parties with complete and effective relief in a single action, protecting the absentee, and fairness to the other party."  *Id.*

The first disagreement amongst the parties (and non-party PMA) here is whether the SAC seeks to invalidate or set aside portions of the PCLCD.  Plaintiffs and PMA

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

argue that the SAC seeks no such relief; rather, Plaintiffs allege only that Defendants' *conduct* in interpreting the PCLCD through the arbitration and grievance process violates the Sherman Act. (*See* Pls.' Joinder Mot. at 3; PMA Joinder Mot. at 6–7.) Specifically, Plaintiffs cite paragraphs 39 through 41 of the SAC in which Plaintiffs' challenge Defendants' conduct in "interpret[ing] and enforc[ing]" provisions of the PCLCD. (Pls.' Joinder Mot. at 3–4 (citing SAC ¶¶ 39–41).) Further, Plaintiffs argue that they are only seeking monetary damages against Defendants (not PMA) and "to enjoin Defendants from engaging in anti-competitive conduct that arises from Defendants' own interpretation of the PCLCD and not from any anti-competitive provisions of the PCLCD itself." (Pls.' Joinder Mot. at 6.) Plaintiffs selectively read their own SAC, however.

While Plaintiffs may have intended to limit their challenge only to Defendants' conduct and not the terms of the PCLCD, the SAC suggests otherwise. Throughout the SAC, Plaintiffs challenge the purpose and intent of the "provisions of the PCLCD, *as written and applied*," (*See, e.g.*, SAC ¶¶ 41, 45, 52, 57, 94, 96, 113 (emphasis added)), and claim that the provisions violate antitrust laws by "eliminat[ing] competition which Defendants would face from Plaintiff unions and their affiliated contractors," (SAC ¶ 45), "prohibiting the award, contract or subcontract of said work to a contractor not signatory to the Defendants, (SAC ¶ 52), and "impos[ing] a barrier to entry to the market for the relevant work in the relevant market area," (SAC ¶ 57). Further, Plaintiffs explicitly allege that the provisions are "unlawful." (SAC ¶ 113); *cf. Brum v. County of Merced*, No. 1:12-cv-01636-AWI-KSO, 2013 WL 2404844, at *14 (E.D. Cal. May 31, 2013) (explaining that "although Plaintiffs allegations arise under provisions of the collective bargaining agreement, the discriminatory allegations are based on Defendants' alleged unequal administration and implementation of those provisions, not the actual provisions itself"). Thus, it is unclear on what basis Plaintiffs now contend that they have limited their claims and are *not* challenging the lawfulness of the PCLCD's provisions.

Thus, the next inquiry becomes whether PMA must be joined for the Court to accord complete relief and to invalidate or find unlawful certain provisions of the PCLCD. *See* Fed. R. Civ. P. 19(a)(1)(A). "It is well-settled that in an action to set aside a contract, all parties to the contract must be present." *Nat'l Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1185 (E.D. Cal. 2008); *see also Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005) ("[I]t is a 'fundamental principle' that 'a party to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.'"), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."). Further, courts have found that all parties to a collective bargaining agreement are required where it appears likely "that the resolution of Plaintiffs' claims will require interpretation of the collective bargaining agreement." *Greer v. Pac. Gas & Elec. Co.*, No. 1:15-cv-01066-EPG, 2016 WL 2939148, at *3 (E.D. Cal. May 18, 2016) (noting that the court "*may* not be able to accord complete relief to Plaintiffs without the addition of [the union defendant]" (emphasis in original)); *cf. Brum*, 2013 WL 2404844, at *11 ("Courts have determined that a union's joinder is not required when the plaintiff's claims rest almost entirely on the implementation and administration of defendant employer's policies and conduct, rather than on the general language contained in the collective bargaining agreement . . . , when the claims are narrowly defined and relief can be accorded between the already named parties . . . , [or] when the union and its other members would not be deprived of their rights or the terms of the collective bargaining agreement were controlled by law . . . ." (citations omitted)).

Here, Plaintiffs claim that certain provisions of the PCLCD "as written and applied" have the effect of being unlawful in that they preclude awarding subcontracting work to workers who are not PMA members. (*See, e.g.*, SAC ¶¶ 41, 42, 45.) Therefore, it appears that to afford relief, the Court will be required to interpret the PCLCD and any decision will turn on the language of the agreement itself. Further, any court order granting injunctive relief that may strike down these provisions of the PCLCD would require the cooperation and participation of PMA to ensure that the PMA does not continue to enforce these provisions. *See Greer*, 2016 WL 2939148, at *3 (explaining that implementing injunctive or declaratory relief in claim requiring the interpretation of a collective bargaining agreement would require the participation of the non-party union); *see also Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968) ("Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered."); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (holding that if non-party who was signatory

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | Date | December 28, 2016 |
|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | |

on a lease was not joined in action challenging the lease, injunctive relief would not be effective because party would have to choose between complying with the lease or complying with the court order).  Accordingly, PMA is a required party under Rule 19(a)(1)(A).[6]

## 2.    Whether Other Considerations Prevent Joining PMA

Even when a non-party is a required party under Rule 19, whether to join a party "should focus on the practical effects of joinder and nonjoinder."[7]  *Eldredge v. Carpenters 46 N. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981); *Lopez v. Martin Luther King, Jr. Hosp.*, 97 F.R.D. 24, 28 (C.D. Cal. 1983) (explaining that because "[c]ompulsory joinder is the exception to the otherwise general policy of allowing the plaintiff to decide who shall be parties to the lawsuit," it becomes necessary that "Rule 19 matters should be governed by practical considerations").  PMA argues that these practical considerations include the prejudice that PMA would suffer by being joined to the action at this stage of the litigation.  (*See*

---

[6] Moreover, though the Court need not reach the joinder requirements of Rule 19(a)(1)(B), the Court notes that Rule 19(a)(1)(B) also weighs in favor of PMA being a necessary party to this litigation.  PMA claims that it has no interest in this litigation, precluding Rule 19(a)(1)(B)'s application.  (*See* PMA Joinder Mot. at 9–10); *see also* Fed. R. Civ. P. 19(a)(1)(B) (defining a required party as one who "claims an interest relating to the subjection of the action").  But PMA undoubtedly has an interest in the PCLCD, and the outcome of this action could result in Defendants being subjected to inconsistent obligations under the PCLCD if PMA is not subject to any injunctive relief striking down the allegedly unlawful provisions.  *See Gray v. Oncor Elec. Delivery Co.*, No. 3:11-CV-00781-L, 2011 WL 6039629, at *3 (N.D. Tex. Nov. 30, 2011) ("Although the Union has not come forward and claimed an interest in the subject of this action, it has an interest in the Agreement and the wages governed by that Agreement.  As a result, Oncor could be subject to multiple or inconsistent obligations under the Agreement and subsequent litigation if the Union is not joined in this action.").  Thus, PMA likely qualifies as a required party under Rule 19(a)(1)(B) as well.

[7] Rule 19(b) addresses the appropriate way to proceed if joinder of a non-party is not "feasible."  *See* Fed. R. Civ. P. 19(b).  However, joinder is not feasible in three situations: (1) when venue would be improper; (2) when the non-party is not subject to personal jurisdiction; or, (3) when joinder would destroy the court's subject matter jurisdiction.  *See E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  Neither Defendants, Plaintiffs, nor PMA argue that joinder is not feasible under Rule 19 in this case; thus, the Court need not address feasibility.

---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | Date | December 28, 2016 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

PMA Joinder Mot. at 10–11.)  PMA contends that it would be prejudiced because multiple motions, including a motion for summary judgment, have already been decided without PMA's participation.  (PMA Joinder Mot. at 10.)  In addition, PMA claims that it would seek to file its own motion to dismiss and motion for summary judgment, and would be required to retain experts and reopen depositions that have already taken place. (PMA Joinder Mot. at 11.)  Defendants argue that these effects may be alleviated through altering the trial date and the case schedule to allow PMA time to file its requested motions.  (*See* Joinder Reply at 8–9.)

Nonetheless, potential prejudice is not a reason to deny joinder once a non-party is proven to be necessary and joinder is feasible; rather, Rule 19(a) provides that a required party "must be joined."  *See* Fed. R. Civ. P. 19(a).  Thus, even acknowledging that PMA and the parties may suffer some prejudice by PMA's joinder, the Court finds that joinder is necessary.  Accordingly, Defendants' Motion for Joinder of PMA is **GRANTED**.

### C.    Motion for Leave to File an Additional Motion for Summary Judgment

Defendants' third pending Motion is a Motion for Leave to File a Motion for Summary Judgment.  (*See* Mot. for Leave.)  This Court's Standing Order provides that "[n]o party may file more than one motion pursuant to Fed. R. Civ. P. 56 . . . without leave from the Court."  (Dkt. No. 8 at 8.)  Defendants first filed a Motion for Summary Judgment in July 2015, (Dkt. No. 55), which this Court denied as premature, (Dkt. No. 68).  In its Order denying Defendants' first Motion for Summary Judgment, the Court limited discovery "to the issue of whether or not the nonstatutory labor exemption applies."  (Dkt. No. 68 at 13.)  After participating in this limited discovery, Defendants then renewed their Motion for Summary Judgment as to the application of the nonstatutory antitrust exemption on July 11, 2016.  (Dkt. No. 80.)  On September 12, 2016, the Court denied Defendants' renewed Motion.  (Dkt. No. 96.)  Defendants now request leave to file an additional Motion for Summary Judgment as to the merits of Plaintiffs' claims.  (*See* Mot. for Leave at 1.)  Defendants contend that another Motion for Summary Judgment is appropriate because (1) the parties participated in phased discovery in this case, (2) there is good reason to believe that Plaintiffs' claims will be narrowed by summary judgment, and, (3) summary judgment is the most efficient way to proceed with this case.  (*See* Mot. for Leave at 2–4.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-05604-BRO (SSx)** | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | **SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL.** | | | |

Plaintiffs oppose Defendants' request, however, arguing that (1) the only reason the parties participated in phased discovery was at Defendants' request, and, (2) "there is no reason to believe that Plaintiffs' anti-trust claims will be resolved or substantially narrowed as a result of a third motion for summary judgment. (Leave Opp'n at 2.) Further, according to Plaintiffs, if Defendants file another motion, "the parties will be spending time and effort addressing another motion for summary judgment rather than preparing this case for trial and/or attempting to settle same." (Leave Opp'n at 3.)

The Court agrees with Defendants. Allowing Defendants to file a second Motion for Summary Judgment will allow the parties and the Court to address the merits of Plaintiffs' claims prior to trial. Further, allowing Defendants to file a Motion for Summary Judgment on the merits of Plaintiffs' claims is appropriate considering the Court's Order that discovery be phased and initially limited only to the application of the nonstatutory exemption. (*See* Dkt. No. 68 at 13.) As discovery has now continued on to the merits of Plaintiffs' claims, the Court finds that allowing Defendantsrene the opportunity to move for summary judgment based on this additional discovery is appropriate. Moreover, Defendants identify several primarily legal issues that *may* be decided on summary judgment. (*See* Mot. for Leave at 3–4.) Even if the Court ultimately denies summary judgment, the Court finds that it would be appropriate to address these issues initially through summary judgment before proceeding to trial. Accordingly, the Court **GRANTS** Defendants' Motion for Leave to File a Motion for Summary Judgment.

## V.   CONCLUSION

Accordingly, the Court holds the following:

1) Defendants' Motion for Reconsideration is **GRANTED in part and DENIED in part**;
2) Defendants' request that the Court certify this case for interlocutory appeal is **DENIED**;
3) Defendants' request that the Court stay these proceedings is **DENIED**;
4) Defendants' Motion to Join PMA is **GRANTED**; and,

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | Date | December 28, 2016 |
|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | |

5) Defendants' Motion for Leave to File a Motion for Summary Judgment is **GRANTED**.

Because the Court orders the joinder of PMA, the Court continues the trial date in this matter to **Tuesday, June 20, 2017**. Plaintiffs are **ORDERED** to file a Third Amended Complaint adding PMA as a Defendant no later than **January 3, 2017 by 4:00 p.m.** In addition, the Court amends the Schedule of Trial and Pretrial Dates. The amended schedule is attached to this Order. Only PMA need answer the Third Amended Complaint; Defendants' prior responses to the Second Amended Complaint will also be deemed their responses to the Third Amended Complaint.

In its Opposition, PMA indicates that, if joined, it wishes to file a Motion to Dismiss and a Motion for Summary Judgment. (PMA Joinder Opp'n at 10–11.) In addition, as determined above, the Court has granted Defendants leave to file an additional Motion for Summary Judgment on the merits of Plaintiffs' claims. Therefore, the Court sets the following briefing schedules:

1) PMA is **ORDERED** to file a Motion to Dismiss, if any, no later than Monday, February 6, 2017, with a hearing date of Monday, March 6, 2017. Plaintiffs' response must be filed by Monday, February 13, 2017. PMA's Reply, if any, is due by Monday, February 20, 2017.
2) The parties are **ORDERED** that additional Motion(s) for Summary Judgment, if any, must be filed no later than Monday, March 27, 2017, with a hearing date of Monday, April 24, 2017. Plaintiffs' response(s) must be filed by Monday, April 3, 2017. Any Reply must be filed no later than Monday, April 10, 2017.

The case schedule is not subject to amendment.

### IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | rf |

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-05604-BRO (SSx) | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

# JUDGE BEVERLY REID O'CONNELL
## SCHEDULE OF TRIAL AND PRETRIAL DATES

| Matter | Time | Weeks before trial | Plaintiff(s) (Request) | Defendant(s) (Request) | Court Order |
|---|---|---|---|---|---|
| **Trial (jury)** **Estimated length: _____ hours** | 8:30 am | | | | 06/20/2017 |
| **File Findings of Fact and Conclusions of Law** | 1:30 pm | -1 | | | 6/12/2017 |
| **File Joint Deposition Designation Submission and lodge pertinent depositions transcript** | | 13 days | | | 6/7/2017 |
| **Hearing on Motions in Limine** | 1:30 pm | -2 | | | 6/5/2017 |
| **Pretrial Conference; file Agreed-to Statement of Case; Exchange objections/response to deposition designations** | 3:00 pm | -4 | | | 5/22/2017 |
| **Motions in Limine to be filed** | | -6 | | | 5/8/2017 |
| **Lodge Pretrial Conf. Order; File Memo of Contentions of Fact and Law; Exhibit & Witness Lists; Exchange deposition designations** | | -6 | | | 5/8/2017 |
| **Last date to file Joint Report re ADR proceeding** | | -7 | | | 5/1/2017 |
| **Last date to conduct ADR proceeding** | | -8 | | | 4/24/2017 |
| **Last day for hearing motions** | 1:30 pm | -9 | | | 4/17/2017 |

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-05604-BRO (SSx) | | Date | December 28, 2016 |
|---|---|---|---|---|
| Title | SURF CITY STEEL, INC. V. INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ET AL. | | | |

| | | | | |
|---|---|---|---|---|
| **Discovery cut-off [Note: Expert disclosure no later than 70 days prior to this date.]** | | -10 | | | 4/10/2017 |
| **Last day for parties to file Motion(s) for Summary Judgment (with a 4/24/2017 hearing date)** | | | | | 3/27/2017 |
| **Last day for PMA to file a Motion to Dismiss (with a 3/6/2017 hearing date)** | | | | | 2/6/2017 |
| **Last day to Amend Pleadings or Add Parties** | | | | | 1/3/2017 |