1 | DAVID A. ROSENFELD, Bar No. 058163
LISL R. SOTO, Bar No. 261875
2 | WEINBERG, ROGER & ROSENFELD
A Professional Corporation
3 | 800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
4 | Tel:  (213) 380-2344
Fax:  (213) 443-5098
5 | E-Mail: drosenfeld@unioncounsel.net
          lsoto@unioncounsel.net
6 |
7 | RONALD C. GLADNEY, Bar No. 28160
PAUL C. HETTERMAN, Bar No. 27126
8 | HARTNETT GLADNEY HETTERMAN, L.L.C.
4399 Laclede Avenue
9 | St. Louis, Missouri 63108
Tel: (314) 531-1054
10 | Fax: (314) 531-1131
E-Mail:  rgladney@hghllc.net
11 |          phetterman@hghllc.net
12 | Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURF CITY STEEL, INC., et al., | Case No. 2:14-05604 BRO (SS) |
| Plaintiffs, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF DEFENDANT PACIFIC MARITIME ASSOCIATION TO DISMISS THE THIRD AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN PORTIONS THEREOF** |
| v. | |
| INTERNATIONAL LONGSHORE and WAREHOUSE UNION, et al., | |
| Defendants. | **[FRCP Rules 16(b)(6) & 12(f)]** |
| | Date:   March 6, 2017 |
| | Time   1:30 p.m. |
| | Court: 7C-7th Floor |

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions Thereof
Case No. 2:14-05604 BRO (SS)

# TABLE OF CONTENTS

Page

I.    Relevant Procedural History…………………………………………….    1

II.   Factual Background……………………………………………...….    2

III.  Legal Standard…………………………………………………....    8

IV.   Argument………………………………………………………    9

    A.    Section 1 of the Sherman Act……………………………......    9

    B.    Section 2 of the Sherman Act……………………………...    20

V.    Non-Statutory Labor Exemption……………………………………    23

VI.   PMA's Alternative Motion to Strike the Claims of The Iron Worker
      Plaintiffs, as well as the Claims of Plaintiff Surf City and Sarens
      USA for Damages…………………………………………………...    23

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

i
Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.
141 F.3d 947, 950 (9th Circ. 1998)…………………………………....    15

Allen-Bradley Co. v. Local Union No. 3
325 U.S. 797, 808 (1945)…………………………………………….   21, 22, 23

American Needle, Inc. v. NFL, et al., 560 U.S. 183, 201 (2010)……….    11

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)……………………………    8

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)…………………    8

California ex rel. Harris v. Safeway, Inc.
651 F.3d 1118, 1133 (9th Cir. 2011)…………………………………    9, 10, 17, 19

Cascade Health Solutions v. Peace Health
515 F.3d 883, 893 (9th Cir. 2008)…………………………………..    20

Chicago Board of Trade v. U.S., 246 U.S. 231, 238 (1918)…………….    10

Coastal Transfer Co. v. Toyota Motor Sales, USA
833 F.2d 208 (9th Cir. 1987)…………………………………………    15

General Leaseways, Inc. v. National Truck Leasing Association
744 F.2d 588, 597 (7th Cir. 1984)…………………………………    17

GSI Technology, Inc. v. Cypress Semiconductor Corp.
2015 W.L. 365491 (N.D.Cal.) *4………………………………………    9

Hahn v. Oregon Physicians' Serv.
868 F.2d 1022, 1030 (9th Cir. 1988)………………………………….    9

Klor's, Inc. v. Broadway-Hale Stores, Inc.
359 U.S. 207, 212 (1959)……………………………………...    7, 9, 11, 13, 14, 16

Leegin Creative v. PSKS, Inc., 551 U.S. 877, 890 (2007)…………………    19

Los Angeles Memorial Coliseum v. NFL
726 F.2d 1381, 1397 (9th Cir. 1981)………………………………..    5, 19

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

1

Page(s)

2

Manzarek v. St. Paul Fire & Marine Ins. Co.
519 F.3d 1025, 1031 (9th Cir. 2008)……………………………………………  8

3

4

Northern Pacific Railway Company v. U.S., 356 U.S. 1, 5 (1958)…………  10

5

NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 135 (1998)…………………..  10

6

Orchard Supply Hardware, LLC, v. Home Depot
2013WL5289011 (N.D.Cal.)…………………………………………………… 19

7

8

Rutman Wine Co. v. E. & J. Gallo Winery
829 F.2d 729, 735 (9th Cir. 1987)………………………………………………  18

9

Summit Health, Ltd., v. Pinhas, 500 U.S. 322, 332 (1991)…………………  19, 24

10

11

White Motor Company v. U.S., 372 U.S. 253, 259-260 (1963)……………..  10

12

FTC v. Ind. Fed'n. of Dentists, 476 U.S. 447, 458 (1986)…………………  15, 17

13

14

FTC v. Superior Court Trial Lawyers Association
493 U.S. 411, 423 (1990)……………………………………………………  15

15

16

U.S. v. DuPont, 351 U.S. 377, 391-392 (1956)……………………………… 9, 19

17

U.S. v. e-Bay, Inc., 968 F.Supp. 2d 1030, 1037 (N.D.Cal. 2013)…………… 9

18

U.S. v. Apple, Inc., 792 F.3d 290, 324 (2nd Cir. 2015)……………………… 11

19

20

**Other**

21

P. Areeda & H. Hovenkamp, "Anti-Trust Law,"
257, at 167 (4th Ed.)……………………………………………………………  8

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  Relevant Procedural History

The initial Complaint was filed on July 18, 2014 against Defendants International Longshore Warehouse Union ("ILWU") and several Locals of the ILWU (collectively, "Union Defendants"). On October 9, 2014, Defendants filed a Motion to Dismiss the Complaint and a request that the Court take judicial notice of the terms of the PCLCD. The Court took judicial notice only of the existence of the PCLCD and not the truth of the facts contained therein as same are not the proper subject of judicial notice. (Dkt. 40 at 6). Furthermore, in its Order of August 25, 2015 denying the Union Defendants' first Motion for Summary Judgment, the Court made clear that while the Court had taken judicial notice of the PCLCD, the truth of the facts contained within the PCLCD is not a proper subject of judicial notice. (Dkt. 68 at 5).

On October 27, 2016, the Union Defendants filed a Motion to Join Pacific Maritime Association ("PMA") or, Alternatively, to Dismiss. The Motion to Join PMA was granted on December 28, 2016 (Dkt. 125 at 21). and Plaintiffs were ordered to file a Third Amended Complaint ("TAC") adding PMA as a Defendant no later than January 3, 2017. The Order stated that the Union Defendants should not file a response to the TAC because said Defendants' prior responses to the Second Amended Complaint ("SAC") would be deemed as their responses to the TAC.

The Order of December 28 did not place any limitations or restrictions upon the claims which could be asserted against PMA. Plaintiffs modified the language of the SAC to include PMA. Defendant, but otherwise, the terms of the TAC are essentially the same as those of the SAC. The SAC included claims brought on behalf of various Union Plaintiffs for breach of contract, violations of labor law and violations of Sections 1 and 2 of the Sherman Act. All of the claims of the Union Plaintiffs were dismissed with prejudice in this Court's Order of June 18, 2015

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

(Dkt. 52). Even though the TAC includes the claims of the Union Plaintiffs which have been dismissed by this Court, Plaintiffs had no intention of attempting to "resurrect" these claims against the Union Defendants or PMA. Plaintiffs sought only to preserve the right of the Union Plaintiffs to appeal the dismissal of their claims as to the Union Defendants. Therefore, Plaintiffs seek leave of Court to withdraw the claims of the Union Plaintiffs against PMA.

In conversations with Counsel for PMA prior to the filing of PMA's Motion to Dismiss, Plaintiffs' Counsel provided the aforesaid information regarding the TAC. Plaintiffs' Counsel also inquired as to whether the issues to be raised in PMA's Motion to Dismiss could be addressed by the filing of a Fourth Amended Complaint. Counsel for PMA advised that the alleged deficiencies of the TAC could not be remedied by an additional Amended Complaint. However, in reviewing PMA's Motion, it appears that most, if not all, of the alleged pleading deficiencies could be remedied by an additional Amended Complaint if deemed necessary by the Court.

## II.   <u>Factual Background</u>

Plaintiffs allege that the Union Defendants and the PMA and its members have acted in concert to exclude Plaintiffs from conducting business in the relevant market area and to permit the ILWU to monopolize or control the labor necessary to perform the relevant work.

As noted in the TAC, labor makes up a substantial majority of the cost of providing the services identified as relevant work. In 2008, the Defendants entered into an agreement which covers the relevant work in the relevant market area known as the Pacific Coast Longshore Contract Document ("PCLCD"). The purpose and intent of certain provisions of the PCLCD was to eliminate competition that certain members of the PMA would face from Plaintiffs in the relevant market. These provisions are not designed to preserve work that the Union

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Defendants and their signatory contractors have historically performed, but instead is designed to permit Defendant ILWU to monopolize labor in the relevant market so as to require that only contractors signatory to the ILWU can perform the relevant work in the relevant market area and thereby allow Defendant ILWU to control the amount and price of said relevant work. (TAC, ¶¶ 41-59). The anti-competitive provisions of the PCLCD have no pro-competitive justification. (TAC, ¶ 60).

PMA is a multi-employer association whose members are stevedore companies, marine terminal operators, carriers and maintenance companies. Carriers are the companies which carry or transport goods from various locations throughout the world to ports on the West Coast, the relevant geographic area. Terminal operators or port managers are the companies which manage and operate the ports at which the carriers dock. In this respect, the terminal operators provide or sell their services to the carriers.

The stevedore companies provide various services to the terminal operators, such as the loading or unloading of ships docked at the ports managed by the terminal operators. In this respect, the stevedore companies sell their services to the terminal operators. The same relationship exists between the maintenance companies, as sellers, and the terminal operators, as buyers, of the services provided by the maintenance companies.

Each of these groups can be considered as its own "class" of members. Within each class, the members compete with each other. In other words, members of the carrier class compete with each other for the business of companies shipping goods to the West Coast; the members of the operators' class compete with each other for the business of the carriers; the members of the stevedore class and members of the maintenance class compete with each other for the business of the terminal operators.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

The Union Defendants provide labor to the stevedore companies and maintenance companies which then provide their respective services to the terminal operators. These various classes of companies, all of whom are members of the PMA and, therefore, bound by the provisions of the PCLCD, cover all aspects of the transportation of goods through the West Coast ports, starting with the loading of the goods at foreign ports and the unloading of those goods at the West Coast ports and then the loading of those goods onto trains or trucks for delivery throughout the continental United States.

To the extent that any type of work falls within the definition of "maintenance and repair," ("M & R") as set forth in the 2008 and 2014 PCLCDs, each and every member of the four classes is required to subcontract that work only to companies or contractors which are signatory to the Union Defendants. In other words, the Union Defendants control which companies may perform the work in question.[1]

For purposes of an anti-trust analysis, the relevant market consists of a relevant work or product market and a relevant geographic area. The relevant work is defined at ¶ 22 and the relevant geographic area is defined at ¶ 21 of the TAC. The relevant work has been further defined or limited by previous rulings of this Court, stating that the Union Plaintiffs are neither consumers nor competitors in the market of construction, maintenance and structural modification of cranes and movement of cranes and, therefore, were not in competition in the market in which the alleged anti-trust violation occurred. (Dkt. 40 at 12-13). Plaintiffs Surf City and

---

[1] PMA asserts that there are "red circle" and "pre-commission" exceptions to this requirement. (Dkt. 143 at 4). This statement is based upon PMA's interpretation of the PCLCD and, therefore, is not binding on this Court. There is no indication that the work covered by these "exceptions" constitutes a significant portion of the market. Information provided in discovery supports a finding that these exceptions cover no more than 10% of the entire market and Plaintiffs can readily amend, if necessary, the TAC to reflect this information. Moreover, any exceptions contained within the PCLCD are subject to the whim of the Defendants and can be limited or eliminated at any time.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Sarens USA do compete in this market. Since 2008, maintenance companies signatory to the Union Defendants have also competed in this market.

Prior to 2008, any contractor using the labor of any union or even non-union labor could compete in this market. However, since the 2008 changes to the PCLCD and the interpretation thereof to include the relevant work and the subcontracting of the relevant work, only contractors signatory to the Union Defendants can compete for said work.

The contractors which perform this work are generally identified by their union affiliation. In other words, both Surf City and Sarens USA are identified as Iron Worker contractors. This designation provides the terminal operator with relevant information as to the type and quality of the labor which said contractor will provide. As such, an Iron Worker contractor is considered to be a certain "brand" whereas an ILWU contractor is considered to be a different brand of competitor. (TAC, ¶ 106). Competition between the Iron Worker and ILWU contractors is considered to be inter-brand competition whereas competition between two ILWU contractors is considered to be intra-brand competition. The anti-trust laws are primarily concerned with protecting inter-brand competition. *Los Angeles Memorial Coliseum v. NFL*, 726 F.2d 1381, 1397 (9th Cir. 1981).

After the changes made in the 2008 PCLCD, the Union Defendants began to assert claims that certain provisions in the agreement required all members of the PMA, be they carriers, terminal operators, stevedore companies or maintenance companies, to subcontract work covered by the M & R provisions of the PCLCD only to contractors signatory to the Union Defendants. At the same time, the Union Defendants began to claim that the relevant work was covered by the M & R provisions. In other words, after 2008, the Union Defendants began to claim for the first time that the relevant work could only be subcontracted by any member of the PMA to subcontractors signatory to the Union Defendants. (TAC, ¶¶ 35-43).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

These claims ultimately went through the grievance and arbitration procedures set forth in the 2008 PCLCD and the Union Defendants were successful. As a result, Iron Worker contractors which had been awarded jobs to perform the relevant work were required to give up their awards and, in some cases, thrown off the job sites after beginning the work. (TAC, ¶ 41, ¶¶ 70-90). It soon became clear that the PMA and its members had concluded that the relevant work could no longer be performed by non-ILWU contractors and must, therefore, be awarded to contractors signatory to the ILWU. As a result, non-ILWU contractors, such as Plaintiffs, stopped submitting bids to perform the relevant work because it takes time and money to prepare and submit bid proposals and no reasonable business person would expend that time and money pursuing work which he is now contractually prohibited from obtaining. (TAC, ¶ 58). The TAC further alleges that the M & R provisions impose a barrier to entry. (TAC, ¶ 58).

The PMA claims that Plaintiffs <u>cannot</u> allege that all purchasers of the relevant work belong to the PMA. (Dkt. 143 at 6). But PMA has provided no support for this proposition. The TAC also identifies a number of post-2008 projects in which ILWU contractors performed the relevant work (¶¶ 70-90).

The relevant geographic area or market consists of that area wherein customers can reasonably go to purchase the product at issue. Here, however, the relevant work must be performed at a particular port on the West Coast. Moreover, regardless of which contractor performs the work, it must be signatory to the ILWU. Therefore, it is appropriate to define the relevant geographic area as that area which is subject to the anti-competitive provisions of the PCLCD.

PMA complains that the ". . . TAC does not allege that, on balance, competition in any relevant market has been reduced – particularly after accounting for the obvious pro-competitive, cost saving efficiencies achieved from the introduction of new technologies, including robotics, enabled by the M & R

- 6 -

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

provisions." (Dkt. 143 at 7). This complaint is without merit.

First, Plaintiffs have alleged that these provisions have no pro-competitive justification (TAC, ¶¶ 60, 92). Second, the self-serving statements made by the PMA and the Union Defendants in the PCLCD cannot be considered at this stage because the Court cannot take judicial notice thereof. (Dkt. 68 at 5). Third, it is obvious that the anti-competitive provisions precluding non-ILWU contractors from competing do not themselves provide any pro-competitive effects. Whatever benefits other provisions of the PCLCD may provide are irrelevant to this discussion.

The PMA claims that it makes no economic sense for the terminal operators which purchase the relevant work to eliminate competition from the M & R companies such as Plaintiffs which sell the relevant work. The simple answer is that regardless of the reason for entering into such an agreement, the terminal operators have done so. The PMA has not argued that it and its members did not enter into this agreement. Rather, PMA argues that it could not have done so for the purpose of hurting itself. (Dkt. 143 at 14).

The motives for PMA's actions, at this point, are irrelevant. That PMA entered into the agreement and that the agreement has had an anti-competitive effect by eliminating competition from non-ILWU contractors is all that matters.[2] However, such conduct is not unusual. In *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959), a group of suppliers agreed not to do business with one of their customers for the sole purpose of helping a competitor of the customer, not themselves. As noted below, the Court found that this scheme fell within the class of *per se* violations of the anti-trust laws. Moreover, experience has taught us that economic decisions are made for a variety of reasons, including those which may not be of any obvious help the decision maker.

---

[2] As opposed to motive, Plaintiffs have alleged an intent on the part of the Defendants to harm competition. (TAC ¶¶ 42-48).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

As will be noted below, multi-employer agreements such as the PCLCD are inherently anti-competitive in that they contain features of price fixing, market allocation, and group boycotts. That is why the U.S. Supreme Court created the non-statutory labor exemption. The exemption is intended to protect valid collective bargaining agreements from the threat of anti-trust litigation. *P. Areeda & H. Hovenkamp*, "Anti-Trust Law," ¶257, at 167 (4th Ed.).

### III.   Legal Standard[3]

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

---

[3] This standard is adopted verbatim from the standard set forth in the Court's ruling on the Motion to Dismiss the Original Complaint. (Dkt. 40 at 4).

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

## IV.   **Argument**

### A. **Section 1 of the Sherman Act**

To establish a claim under Section 1, a plaintiff must show that (1) that there was a contract, combination or conspiracy and (2) that the agreement unreasonably restrained trade. *GSI Technology, Inc. v. Cypress Semiconductor Corp.*, 2015 W.L. 365491 *4 (N.D.Cal.). Courts generally identify restraints as unreasonable if they raise price, reduce output, lower quality, eliminate customer choice, or create or enhance market power. *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011). Market power is the ability to control prices *or to exclude competition*. *U.S. v. DuPont*, 351 U.S. 377, 391-392 (1956).

PMA has not denied entering into the 2008 and 2014 PCLCDs. Therefore, the only issue is whether these provisions of the PCLCDs constitute an unreasonable restraint on trade. The courts have adopted three different rules of analysis for making this determination:  the rule of reason, *per se* or quick look. *U.S. v. e-Bay, Inc.*, 968 F.Supp. 2d 1030, 1037 (N.D.Cal. 2013).

The *per se* approach has been applied to group boycotts or concerted refusals by traders to deal with other traders. *Klor's, Inc.* 359 U.S. at 212. Agreements of competitors, whether express or implicit, whether by formal agreement or otherwise, in restraint of trade are outlawed. *California ex rel. Harris*, 651 F.3d at 1132.

The Ninth Circuit has identified three elements of a *per se* group boycott: (1) the boycott cuts off access to a supply, facility or market necessary to enable the plaintiff to compete; (2) the boycotting firm(s) possesses a dominant market position; and (3) the practices are not justified by plausible arguments that they enhance overall efficiency or competition. *Hahn v. Oregon Physicians' Serv.*, 868 F.2d 1022, 1030 (9th Cir. 1988).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

A quick look analysis may be used where an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anti-competitive effect on customers and markets. *California ex rel. Harris*, 651 F.3d at 1134.

Finally, the rule of reason analysis requires the plaintiffs to demonstrate that a particular contract or combination is, in fact, unreasonable and anti-competitive. The rule of reason weighs legitimate justifications for a restraint against any anti-competitive effects. The Court considers the precise harms alleged to the competitive markets and the legitimate justifications provided for the challenged practice and determines whether the anti-competitive aspects of the practice outweigh its pro-competitive effects. *California ex rel. Harris*, 651 F.3d at 1133. "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Chicago Board of Trade v. U.S.*, 246 U.S. 231, 238 (1918).

PMA has chosen to ignore the "quick look" analysis and address only the *per se* and rule of reason approaches. PMA states that a restraint of trade is *per se* unlawful only when the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output and is limited to those cases where the concerted refusal to deal is intended to discourage the boycotted firms from doing business with a competitor of the boycotting firms. (Dkt. 143 at 10). However, PMA describes this standard too narrowly.

Horizontal agreements among competitors to exclude competition are subject to the *per se* rule. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998); *White Motor Company v. U.S.*, 372 U.S. 253, 259-260 (1963) ("Group boycotts are another example of a *per se* violation."); *Northern Pacific Railway Company v. U.S.*, 356 U.S. 1, 5 (1958) (Among the practices which the courts have heretofore

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

- 10 -
Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

deemed to be unlawful in and of themselves are group boycotts). For purposes of this anti-trust analysis, the PMA and each of its members is treated as a distinct entity and, therefore, agreements among or between them are subject to anti-trust scrutiny. *American Needle, Inc. v. NFL, et al.*, 560 U.S. 183, 201 (2010). As noted above, the members of each of the four different classes in the PMA are competitors with each other and, as such, the agreements among them to adopt the provisions of the PCLCD constitute horizontal agreements for anti-trust purposes. The agreements among the terminal operators constitute horizontal agreements, as do the agreements among the maintenance companies. The members of each of these groups have entered into horizontal agreements not to subcontract the relevant work to any non-ILWU contractor.

Of course, given the business relationships among these groups or classes, there are vertical agreements as well. For example, a terminal operator member of the PMA has agreed with a maintenance company member of the PMA not to subcontract the relevant work to any non-ILWU contractor. And, of course, all of these companies have entered into a vertical agreement with the Union Defendants not to subcontract the relevant work to a non-ILWU contractor. The stated purpose of each of these horizontal and vertical agreements is to exclude competition from non-ILWU contractors which perform the relevant work. Conspiracies which involve both horizontal and vertical agreements are properly evaluated as *per se* violations. *Klor's, Inc.,* 359 U.S. at 212-213; *U.S. v. Apple, Inc.*, 792 F.3d 290, 324 (2nd Cir. 2015) ("A horizontal conspiracy can use vertical agreements to facilitate coordination without the other parties to those agreements knowing about, or agreeing to, the horizontal conspiracy's goals").

Horizontal group boycotts or concerted refusals to deal, cannot be saved by allegations that they were reasonable, nor by a failure to show that they fixed prices, limited production or brought about a deterioration in quality. *Klor's, Inc.,*

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

359 U.S. at 212.

Turning to the standards set forth by the Ninth Circuit for *per se* treatment of group boycotts, it is clear that these provisions of the PCLCD deny the Plaintiffs access to the market for relevant work which is necessary to enable the Plaintiffs to compete. Second, the terminal operators purchase 90-100% of the relevant work and thus possess a dominant market position and, third, the anti-competitive provisions are not justified by plausible arguments that they enhance overall efficiency or competition inasmuch as no such justifications have been alleged.[4]

An anti-competitive scheme to eliminate a competitor of any participants in the scheme is *per se* unlawful if it involves horizontal agreements. If a group of purchasers agree not to do business with a particular supplier in order to help the competitors of that supplier, that is a *per se* violation, even though the injured competitor does not compete at the same level of the market as the purchasers.

In this case, the terminal operators, as a group of purchasers, agreed not to do business with the seller Plaintiffs in order to help ILWU maintenance companies which were also members of the PMA. This agreement not only helps the maintenance companies which use ILWU labor, but the Union Defendants which provide the ILWU labor. While such an arrangement may not appear to make economic sense for the terminal operators, the fact is that parties to a multi-employer agreement may accept unfavorable provisions, not because they want to, but because they are forced to do so. For example, the terminal operators may feel forced to enter into this type of agreement to avoid retaliation from the Union Defendants, such as work stoppages, work delays, or poor performance in other

---

[4] PMA suggests that the PCLCD makes reference to a pro-competitive benefit of facilitating the introduction of new technologies, including fully mechanized and robotic-operated marine terminals. (Dkt. 143 at 10). First, as noted above, the language of the PCLCD cannot be used to prove the truth of the matter asserted at this stage. Second, nothing in the PCLCD suggests that the "new technologies" apply to the relevant work. In fact, discovery has indicated that the relevant work has not been "improved" by technological advances.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

areas of work performed by members of the Union Defendants.

The facts here are similar to the facts underlying the decision in *Klor's, Inc.* Klor's was a retail appliance store which competed with defendant Broadway-Hale. Klor's alleged that various manufacturers of well-known brands of appliances and their distributors had conspired among themselves and with Broadway-Hale not to sell to Klor's *or* to sell only at discriminatory prices and highly unfavorable terms. Klor's further alleged that Broadway-Hale had used its monopolistic buying power to bring about this situation. As a result, Klor's alleged that its ability to compete had been severely handicapped which had caused Klor's to suffer loss of profits, good will, reputation and prestige.

The district court granted summary judgment for defendant and this decision was affirmed on appeal. The Appellate Court held that there was no public injury due to the acts of the defendants inasmuch as there was no claim that any act of the defendants had adversely affected the price, quantity or quality of products offered to the public. The U.S. Supreme Court expressed a concern that such a holding, if adopted, would allow a group of powerful businessmen to act in concert to deprive a single merchant like Klor's of the goods needed to compete effectively unless the merchant could demonstrate that the opportunities for customers to participate in a competitive market had been reduced. Id. at 210.

The Supreme Court, therefore, rejected this contention and stated that group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be *per se* violations of Section 1. The Court further noted that said agreements cannot be saved by allegations that they were reasonable in the specific circumstances, nor by a failure to show that they fixed or regulated prices, parceled out or limited production, or brought about a deterioration in quality. Id. at 212.

Plainly the allegations of this complaint disclose such a boycott. This is not a case of a single trader refusing to deal with another, nor even

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

of a manufacturer and a dealer agreeing to an exclusive distributorship. Alleged in this complaint is a wide combination consisting of manufacturers, distributors and a retailer. This combination takes from Klor's its freedom to buy appliances in an open competitive market and drives it out of business as a dealer in the defendants' products. It deprives the manufacturers and distributors of their freedom to sell to Klor's at the same prices and conditions made available to Broadway-Hale and in some instances, forbids them from selling to it on any terms whatsoever. It interferes with the natural flow of interstate commerce. It clearly has, by its nature and character, a monopolistic tendency. As such, it is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy. Id. at 212-213.

Not only does *Klor's, Inc.* support Plaintiffs' position regarding the application of the *per se* rule to the facts set forth in the TAC, but it also clearly addresses the claim made by PMA regarding the alleged requirement that the *per se* analysis can only be applied to horizontal agreements among competitors of the Plaintiff. Obviously, in *Klor's*, the horizontal agreements were among the manufacturers as one group and the distributors as a second group and the members of each group agreed with Broadway-Hale to the restrictions on dealing with Klor's. There was no allegation that Broadway-Hale had entered into an agreement with one of its competitors to engage in conduct detrimental to Klor's or that the manufacturers and distributors had entered into this scheme in an attempt to harm one of their own competitors. In that respect, the anti-competitive scheme in *Klor's* is less pervasive than the scheme here wherein a group of purchasers of the relevant work and a group of competitors of Plaintiffs each entered into agreements with the

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

other and the Union Defendants not to do business with the Plaintiffs.[5]

Defendants' reliance upon *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458 (1986) is misplaced. In that case, the Court opted not to apply the *per se* rule because the horizontal agreement involved members of a professional organization. Even then, the Court concluded that the agreement was unlawful without any significant market analysis.

Similarly, the Defendant misreads *Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 950 (9th Circ. 1998). There, the Court concluded that an agreement between two competitors did not disadvantage a third competitor because there was no third competitor. The only participants in the anti-competitive scheme were Raytheon and Hughes, purchasers of plaintiff's products. There was no allegation that any competitor of plaintiff which may have benefitted from the agreement between Raytheon and Hughes was a participant in the alleged anti-competitive scheme. Here, of course, there are allegations that Plaintiffs' competitors are participants in this unlawful scheme.

Nor does *Coastal Transfer Co. v. Toyota Motor Sales, USA*, 833 F.2d 208 (9th Cir. 1987) support plaintiff's position. *Coastal* involved the replacement of one carrier with another carrier to deliver parts to dealers. The Court found there was no intent to injure competition inasmuch as the defendant simply replaced one carrier with another because of the poor performance of the former carrier. The Court explained as follows:

> Toyota's decision to replace Coastal with a new carrier is precisely the type of competitive activity that the anti-trust laws are designed to protect. The Sherman Act distinguishes between exclusive dealer arrangements which eliminate a competing dealer and a collective

---

[5] Also see *FTC v. Superior Court Trial Lawyers Association*, 493 U.S. 411, 423 (1990) wherein the Court held that an agreement among numerous attorneys not to represent indigents constituted a *per se* group boycott, even though there was no allegation that the lawyers intended to harm or adversely affect other lawyers.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

refusal to deal among dealers or suppliers. (Cite omitted). While the latter are condemned *per se* because of their lack of any redeeming virtue, *see*, *Klor's v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959), this case falls in the former category. <u>Id</u>. at 211.

While the Plaintiffs here are suppliers or sellers to the terminal operators and not competitors of the terminal operators, the Plaintiffs are competitors of the maintenance companies which perform the relevant work with ILWU labor and are members of the PMA. The simple fact is that Plaintiffs' customers, Plaintiffs' competitors and the Union Defendants have all agreed that the relevant work will only be performed by contractors using ILWU labor. This combination of horizontal and vertical agreements qualifies for *per se* treatment under the anti-trust laws.[6]

As noted, the PMA has not addressed the quick look analysis and, therefore, Plaintiffs do not have an opportunity to respond to any argument from the PMA that the quick look analysis does not apply. Suffice it to say that a person with just a rudimentary understanding of economics could conclude that any agreement which precludes inter-brand competition would have an anti-competitive effect on customers and markets.

Because of these anti-competitive provisions, no contractor other than one signatory to the ILWU, can compete in the relevant market. This agreement has an obvious adverse effect upon non-ILWU contractors who want to compete, as well as upon terminal operators which wish to purchase the services of non-ILWU contractors to perform the relevant work.

---

[6] The teaching of these various cases is that a scheme involving horizontal agreements not to compete is subject to the *per se* analysis when the scheme is intended to injure or eliminate the competitor of *any* participant in the scheme.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Defendants' insistence that this claim must be dismissed because it "makes no economic sense for buyers to conspire to reduce competition among sellers in the market in which they buy" (Dkt. 143 at 21) misses the point. This is not a case where PMA has denied entering into the contract. Nor, at this stage, can PMA deny the allegations that these provisions deny Plaintiffs the opportunity to compete in the market for relevant work in the relevant market area. We discussed above the reasons why the terminal operators may consent to such provisions. The Courts are only concerned with redressing the anti-competitive effect of an unlawful agreement and it does not even matter if the person seeking that redress is a party itself to the unlawful agreement. *See*, *General Leaseways, Inc. v. National Truck Leasing Association*, 744 F.2d 588, 597 (7th Cir. 1984), wherein the Court noted that when an equitable maxim, such as "clean hands," collides with the objectives of the anti-trust laws, the equitable maxim must give way. This combination or scheme is subject to a quick look, if not *per se*, anti-trust analysis.

Under a rule of reason analysis, restraints on trade are generally considered unreasonable if they raise price, reduce output, lower quality, eliminate customer choice, or create or enhance market power. *California ex rel.* Harris, 651 F.3d at 1133. Market power may be proven by actual detrimental effects upon the relevant market such as elimination of competition or circumstantially by demonstrating that Defendant possesses a dominant share in the relevant market which, in turn, consists of a relevant product market and a relevant geographic market. *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986).

Here, Plaintiffs have alleged actual detrimental effects upon the competitive market. Plaintiffs have alleged that the parties have entered into an anti-competitive agreement which precludes non-ILWU contractors from competing for the relevant work and that as a result, non-ILWU contractors no longer bid on projects involving the relevant work and, in some cases, non-ILWU contractors have had

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

- 17 -

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

contracts to perform the relevant work withdrawn and have been removed from the job site. The fact that the Defendants have been able to achieve these ends demonstrates the market power, and anti-competitive use thereof, required for a Section 1 violation. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) (no anti-trust violation occurs unless the exclusive agreement is intended to *or* actually does harm competition in the relevant market).

PMA, however, ignores this evidence of actual anti-competitive effect and instead claims that Plaintiffs have failed to alleged sufficient facts from which this Court can conclude that PMA and the Union Defendants have sufficient market share within a relevant market whereby Defendants can adversely affect the competitive marketplace, i.e., market power. In so doing, PMA complains that Plaintiffs have not adequately alleged a relevant market or anti-competitive effects. As noted above, the relevant product market consists of those services necessary to perform certain crane work. In previous rulings, the Court has defined this market as one for services provided by contractors such as the Plaintiffs. As a result, there can be no confusion as to whether the Plaintiffs are proceeding on a theory of a labor market, a services market, or a combination thereof.

Prior to the unlawful conduct of the Defendants, this market consisted of any contractors which performed the relevant work; terminal operators which purchased the relevant work; and unions which provided the labor to the contractors necessary to provide the services to the terminal operators. Following the unlawful conduct of the Defendants, only contractors who are signatory to the Union Defendants can bid on and perform the relevant work. Only the Union Defendants can provide labor to those contractors. While arguably the terminal operators could perform the work themselves or another contractor could enter the market, that terminal operator and "new" contractor would still have to use ILWU labor. As a result, the anti-competitive agreements have eliminated the inter-brand competition which

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

previously existed. The primary purpose of the anti-trust laws is to protect inter-brand competition. *Leegin Creative v. PSKS, Inc.*, 551 U.S. 877, 890 (2007); *Los Angeles Memorial Coliseum v. NFL*, 726 F.2d at 1397. Because of the unlawful conduct of the Defendants, the only competition in the market for relevant work is intra-brand competition, i.e., competition among entities which all use ILWU labor.

The competitive significance of Plaintiffs' exclusion from the market must be measured, not just by a particularized evaluation of Plaintiffs' own businesses, but rather, by a general evaluation of the impact of the restraint on other participants and potential participants in the market from which Plaintiffs have been excluded. *See*, *Summit Health, Ltd., v. Pinhas*, 500 U.S. 322, 332 (1991).

Contrary to the assertion of PMA (Dkt. 143 at 20), the Plaintiffs have not limited their allegations of harm to competition to price increases. Rather, Plaintiffs have specifically alleged that Plaintiffs and all other non-ILWU contractors have been precluded from competing in the market for relevant work.[7] As noted in *U.S. v. DuPont*, 351 U.S. at 391-392, market power is the ability to exclude competition. The fact that Defendants have actually excluded competition proves their market power to exclude competition. That type of market power is all that is necessary to warrant a finding of unreasonable restraint of trade. *Orchard Supply Hardware, LLC, v. Home Depot*, 2013 W.L. 5289011 (N.D.Cal.) *8 (given the allegations that the agreements completely foreclosed previously existing competition, the Court can plausibly infer harm to competition without requiring plaintiff to plead the specific percentage of market power that it, and other, competitors previously held.)

PMA repeats its concern that PMA member terminal operators are buyers in the relevant market and it makes no sense for them to conspire to reduce competition among sellers in the market in which they buy. However, PMA fails to

---

[7]   Anti-competitive effects consist of not only increased prices or reduced output, but also lower quality, the elimination of customer choice and the creation or enhancement of market power. *California ex rel. Harris*, 651 F.3d at 1133.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

recognize that maintenance companies which are members of PMA and which compete directly with Plaintiffs, are also bound by the terms of the PCLCD. PMA's argument that Plaintiffs have failed to demonstrate anti-competitive effects simply ignores the allegations in the TAC that the conduct of the Defendants have eliminated inter-brand competition. The fact that ILWU contractors may now have a monopoly on the relevant work and, therefore, may expand their businesses, or that additional ILWU contractors may join the market, thereby increasing intra-brand competition, is not a legal justification for the anti-competitive conduct. Otherwise, any monopolist could claim that the anti-competitive conduct which created the monopoly is outweighed by the additional jobs created by the monopolist.

Finally, PMA refers to portions of the TAC which state that the intent of the Defendants was not to drive Plaintiff contractors out of the market, but to require that said contractors be signatory to the ILWU. (Dkt. 143 at 23). The purpose of the anti-competitive provisions is to eliminate inter-brand competition from any contractor which does not use ILWU labor. The fact that the Union Defendants will "graciously" allow such contractors to become signatory to the ILWU does not eliminate the anti-competitive effect of the agreements. This is no different than Ford Motor Company engaging in anti-competitive conduct to eliminate competition from General Motors and then attempting to justify its conduct by claiming that the GM dealers are free to become Ford dealers.[8]

## B. Section 2 of the Sherman Act

To state a claim for attempted monopolization, Plaintiffs must allege that (1) that the Defendants engaged in predatory or anti-competitive conduct; (2) with an intent to monopolize; and (3) a dangerous probability of success. *Cascade Health Solutions v. Peace Health*, 515 F.3d 883, 893 (9th Cir. 2008). Plaintiffs have made

---

[8] Obviously, the Union Defendants control which contractors may become signatory to the Union Defendants.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

such allegations in their TAC and asserted that the ILWU is attempting to monopolize the market for labor and services to perform the relevant work. (TAC, ¶¶ 105-107). PMA claims that labor unions do not "sell" the labor of their members to the companies with which they enter into collective bargaining agreements; rather, the ILWU negotiates the terms and conditions under which those workers provide their labor to their employers. (Dkt. 143 at 17). PMA asserts that the market for the sale of the labor consists of the individual workers themselves and not the Union. To the extent that the relevant market is for contractor services, the ILWU is not a competitor in that market and, therefore, cannot be a monopolist.

PMA fails to appreciate the overall scope of the anti-competitive scheme in which the Defendants are participants. The scope of and number of participants at different levels of the market structure in this case are similar to those in *Allen Bradley Co. v. Local Union No. 3*, *IBEW*, 325 U.S. 797 (1945). That case involved an anti-competitive scheme or conspiracy involving the defendant Electricians union, which had jurisdiction over the metropolitan area of New York City, as well as local electrical equipment manufacturers and the local electrical contractors which installed and worked on the electrical equipment produced by the manufacturers.

The union entered into various agreements with the manufacturers and contractors which not only required that the manufacturers and contractors employ members of the union, but also required the contractors to purchase equipment only from manufacturers signatory to the union and required the manufacturers to sell their equipment only to contractors signatory to the union. In other words, the local electrical contractors and manufacturers were required to do business only with companies signatory to the union.

In this regard, the facts in *Allen Bradley* are identical to those here in that the contractors which perform the relevant work are required to use ILWU labor and

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

said contractors can only subcontract the relevant work to subcontractors which use ILWU labor. In addition, the terminal operators which purchase the services of the aforesaid contractors are required to use contractors which are signatory to the ILWU. Through the PCLCD, the ILWU has controlled the market for relevant work in the relevant market area just as the IBEW controlled the market for electrical services in the metropolitan area of New York City in *Allen Bradley*.

The Court in *Allen Bradley* had no trouble in declaring that this combination of manufacturers, contractors and the union had violated Sections 1 *and* 2 of the Sherman Act. The only question was whether the conduct was immunized by the non-statutory labor exemption. Id. at 800-801.

In discussing the history of the Sherman, Clayton and Norris-LaGuardia Acts, the Court noted that had there been no union-contractor-manufacturer combination, the union's actions would not have been violations of the Sherman Act inasmuch as said actions were protected by the Clayton and Norris-LaGuardia Acts. Id. at 807. The Court concluded, however, that this combination with non-labor entities was not exempted by the non-statutory labor exemption. Therefore, the union's participation in the anti-competitive scheme constituted violations of both Sections of the Act. Id. at 810-811.

Notably, for our purposes, the Court held the union liable without any discussion of whether the union was a participant in the relevant market. Apparently, the union made no effort to suppress its involvement in the scheme and, in fact, stated that it had been the "dynamic force which has driven the employer-group to enter into agreements" whereby trade has been affected. Id. at 820 (dissenting opinion of Justice Murphy). Here, the ILWU has been the driving force behind the agreements at issue here and the involvement of the other participants.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

*Allen Bradley* supports the position of Plaintiffs that any person or entity which attempts to monopolize and has the power to monopolize a market for commercial services can violate Section 2. As the electricians' union did in *Allen Bradley*, the ILWU has attempted to control the relevant commercial market for services by entering into an agreement with multiple parties involved in said market which obligates all parties to employ ILWU members and/or only do business with companies which employ ILWU members. That is the primary concern of Section 2 and that is why the scheme here violates Section 2 in the same way as did the scheme in *Allen Bradley*.

## V.   Non-Statutory Labor Exemption

PMA makes many of the same arguments made by the Union Defendants in their various motions to dismiss and motions for summary judgment based upon the affirmative defense of the non-statutory labor exemption. Plaintiffs believe that these arguments have been adequately addressed by Plaintiffs' Responses to the Motions to Dismiss the Original, First and Second Amended Complaints, as well as Plaintiffs' Responses to the First and Second Motions for Summary Judgment. More importantly, this has been previously addressed and rejected in this Court's ruling denying the Second Motion for Summary Judgment (Dkt. 96) and the ruling denying Defendants' Motion for Reconsideration of same. (Dkt. 125 at 8-12).

## VI.   PMA's Alternative Motion to Strike the Claims of the Iron Worker Plaintiffs, as well as the Claims of Plaintiffs Surf City and Sarens USA for Damages

The procedural background regarding the naming of the Union Plaintiffs in the TAC is set forth in Section I above and will not be repeated here. While Plaintiffs contend that the Union Plaintiffs' claims against the Union Defendants are preserved for purposes of appeal, the claims of the Union Plaintiffs against PMA should be withdrawn.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

In response to the motion of the Union Defendants to join PMA as a party, Plaintiffs objected to same because they truly did not believe that PMA was a necessary party. Plaintiffs had their own reasons for not joining PMA as a Defendant in the original Complaint. One of those reasons was Plaintiffs' belief that PMA did not agree with the contention of the Union Defendants that the 2008 PCLCD required that the relevant work be covered by the M & R provisions of the PCLCD. Obviously, if the relevant work is not covered by the PCLCD, then Plaintiffs and other non-ILWU contractors would be free to compete for the relevant work as they did prior to the 2008 PCLCD.

However, when the Court ordered the joinder of PMA as a Defendant, there were no limitations or restrictions stated in the Court's Order as to what claims could be brought against the PMA. While PMA insists that the purpose of the Order was to join PMA as a Defendant for purposes of injunctive relief only, there is nothing in the Order which restricts joinder to such a claim. There is nothing in the Order which precludes Plaintiffs from pursuing claims for damages against PMA.

Yet, PMA seeks to strike Plaintiffs' claim for damages claiming that Plaintiffs have somehow violated the Court's Order by seeking damages. However, PMA cannot to point to any provision of the Order which contains such a restriction. Moreover, PMA has not identified any legal reason why Plaintiffs, after being ordered to join PMA as a Defendant, should not be able to pursue a claim for damages. Each of the cases upon which PMA relies involved a violation of a court order. No such violation has occurred here.

Plaintiffs previously asserted that the PMA had not engaged in any anti-competitive conduct because, to the best of Plaintiffs' knowledge, the PMA had not attempted to assert or enforce the interpretation of the PCLCDs advanced by the Union Defendants. However, the essence of any violation of Section 1 is the illegal agreement itself rather than the overt acts performed in furtherance of it. *Summit*

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)

*Health, Ltd.*, 500 U.S. at 330. PMA is a party to the agreement and if the agreement is unlawful, then PMA is liable to Plaintiffs, not only for equitable relief, but also for damages.

Therefore, Plaintiffs respectfully request that this Court deny PMA's Motion to Dismiss the Third Amended Complaint or, In the Alternative, to Strike Plaintiffs' Claims for Damages.

Date:  February 13, 2017                    Respectfully submitted,

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

                                            */s / David A. Rosenfeld*
                                    By:     DAVID A. ROSENFELD
                                            LISL R. DUNCAN
                                            800 Wilshire Boulevard, Suite 1320
                                            Los Angeles, California 90017
                                            Tel:  (213) 380-2344
                                            Fax: (213) 443-5098
                                            E-Mail:  drosenfeld@unioncounsel.net
                                                     lduncan@unioncounsel.net

                                            HARTNETT GLADNEY HETTERMAN,
                                            LLC

                                            */s/ Ronald C. Gladney*
                                            RONALD C. GLADNEY, No. 28160MO
                                            PAUL C. HETTERMAN, No. 27126MO
                                            4399 Laclede Avenue
                                            St. Louis, Missouri 63108
                                            Tel: (314) 531-1054
                                            Fax: (314) 531-1131
                                            E-Mail: rgladney@hghllc.net
                                                     phetterman@hghllc.net

                                            Attorneys for Plaintiffs

135270\901798

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd, Suite 1320
Los Angeles, California 90017
(213) 380-2344

- 25 -
Plaintiffs' Response in Opposition to Motion of Defendant Pacific Maritime Association to
Dismiss the Third Amended Complaint or, in the Alternative, to Strike Certain Portions thereof
Case No. 2:14-05604 BRO (SS)